### VAN NESS v. LAYNE et al.

(Circuit Court of Appeals, Fifth Circuit. April 16, 1914.)

#### No. 2553.

1. PATENTS (§ 167*)—CONSTRUCTION OF CLAIMS—REFERENCE TO SPECIFICATION.
   Broad language of a claim may be limited to the disclosure of the specification when necessary to sustain the patent.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ROTARY PUMP.
   The Layne patent, No. 821,653, for a rotary pump, *held* valid and infringed as to claim 20 and not infringed as to claims 4 and 13.

3. WORDS AND PHRASES—"CLOSED CASING."
   The words "closed casing," as used in the invention of a rotary pump, mean a closure only against what is necessary for the successful operation of the invention.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Western District of Louisiana; Aleck Boarman, Judge.

Suit in equity by Mahlon E. Layne and others against Marvin B. Van Ness. Decree for complainants, and defendant appeals. Modified and affirmed.

Albert E. Dieterich, of Washington, D. C., and Leland H. Moss, of Lake Charles, La., for appellant.

Coke K. Burns, of Houston, Tex., and Paul Synnestvedt, of Pittsburgh, Pa., for appellees.

Before PARDEE, Circuit Judge, and GRUBB, District Judge.

GRUBB, District Judge. The only claims relied on by the complainant (appellee) are those numbered 4, 9, 13, and 20. In the El Campo Case, 195 Fed. 83, 115 C. C. A. 115, the court held the patent valid as to claim 13, and that that claim had been infringed. As we understand, the validity of claims 4, 9, and 20 were not passed upon by the court, but were held not to have been infringed. In the present case we are satisfied that claim 13 is not infringed by the Van Ness pump. The last clause of claim 13 reads, "the casing being closed at the top and provided with an air vent." While the Van Ness pump is closed at the top, it is not contended that the pump has an air vent such as the patented pump had and such as the El Campo pump had. One function of this air vent is to force any water or spent lubricant remaining in the casing, out of it, through an aperture in the top, by forcing air through the air vent into the casing, for the purpose of substituting clean liquid or oil. It seems clear that the Van Ness pump had no such member with a corresponding function as the air vent of the patented pump or that of the El Campo pump, and so cannot be said to infringe claim 13. This, if correct, would prevent complainant from relying upon claim 13 in this case, as a ground of recovery.

Claim 4 includes, in combination with a rotary pump: (1) An extensible pump shaft; (2) a protecting casing for the shaft; and (3) means for supporting the pump, shaft, and casing at any desired point within the well. The last element may be attributed (1) either to a system of wedges in complainant's pump by which the entire apparatus can be fixed, after being raised or lowered in the well, at any point, or (2) to the fact that the shaft and its casing is in sections and can be added to or taken from by the addition or subtraction of sections, and thus, by lengthening or shortening the shaft, the position of the apparatus in the well may be changed. The defendant's pump can be altered in position and there supported by means similar to the second method, since its shaft and casing is also in sections, but the same result cannot be accomplished in defendant's pump by the first method, since it has no system of wedges for that purpose, as are disclosed in the specifications of the complainant's patent. So the question is whether the last clause of claim 4 relates to the supporting of the pump, well, and casing by the system of wedges or by the addition or taking away of sections. If the former,

the claim may be infringed by defendant's pump; if the latter, it cannot be.

We are satisfied, after reading the specifications and the other claims of complainant's patent, that the reference in the concluding element of this claim is to the system of wedges and not to the adding and subtracting of sections. Claim 6 expressly designates the system of wedges as the "means for fixing the pump in position at any desired point of the well casing," by the use of the final words "for the purposes specified," referring to the purposes declared in the preceding claim as quoted. Then the addition or withdrawal of sections does not accomplish the fixing of the pump casing and shaft at any desired point in the well, but only at certain points where the joints between sections are located, whereas by the wedge system the apparatus can be fixed at any point whatever in the well.

For these reasons we do not find that defendant's pump infringes claim 4, since it admittedly has no system of wedges.

This would eliminate all claims relied upon but those numbered 9 and 20.

The elements relied upon in claim 9 are: (1) A jointed pump shaft; and (2) a closed casing surrounding the pump shaft from the pump to the top of the well, in combination with the pump casing of a rotary pump. The sole element in claim 20 is "a line shaft for the pump entirely closed off from the water in the well," in combination with a well casing and a rotary pump therein.

As to claim 9, it is claimed there is no infringement because defendant says that its pump shaft is not a jointed shaft. The contention is that the words "jointed pump shaft" in this claim are identical in meaning with the words "extensible pump shaft," in claim 4, and that the latter words mean a union of sections through a slip joint, so as to give each section play, as to its neighbor, and so to take care of expansion and contraction in the shaft sections, and also to provide, in a limited way, for adjustment in position of the apparatus in the well. It is conceded that defendant's shaft has no slip joints and that when the sections are jointed together they form a rigid whole, which acts as a unit. If the words "extensible pump shaft" and "jointed pump shaft" relate only to a slip joint of the kind described, then it is clear that defendant's apparatus does not infringe claims 4 and 9, since the sections of its pump shaft are jointed together rigidly. It is unimportant to determine the meaning of the words "extensible pump shaft" in this respect, since they are found only in the fourth claim and it has also the element of wedges for fixing the casing and shaft and pump in position, which defendant's apparatus does not contain, so that claim 4 is not infringed regardless of the meaning to be attributed to the words "extensible pump shaft."

It seems that the words "jointed pump shaft" should not be confined in their meaning to a shaft, the sections of which are coupled together with a slip joint which affords room for play between the adjoining sections, but should be construed to include, as well, sections joined together with a rigid joint, like a steel fishing rod, as defendant's shaft admittedly is. If this be the true construction of

these words, then defendant's shaft would be a "jointed pump shaft," within the meaning of these words in claim 4, and would correspond to the disclosure of the claim so far as that feature is concerned. The remaining element of claim 4 is "a closed casing surrounding the pump shaft from the pump to the top of the well." This corresponds substantially with the sole element in claim 20, which is "a line shaft for the pump entirely closed off from the water in the well." It is true that defendant asserts the invalidity of claim 20 of the patent, because he says that the line shaft covers the shaft from the point where power is applied to it to where it is connected with the impeller of the pump, including the stub shaft, which connects with the impellers and which admittedly is not closed off from the water in the well but is always and altogether exposed to it, and that in this re-spect the disclosure of the claim does not correspond with the complainant's apparatus, and hence the claim falls. However, as it is conceded that the so-called stub shaft must always be outside the closed casing and exposed to the water of the well, it seems reasonable to construe the words "line shaft" as referring only to the part of the pump shaft which, alone, can be inclosed in practice; and which, alone, is in fact inclosed in complainant's apparatus.

[3] Giving claim 20 this interpretation, it seems that it is substantially like claim 9, except in the omission of the element of jointure or extensibility of the shaft sections, which adds nothing to the novelty and patentability of the device; and that the element common to each claim, viz., the protective or closed casing surrounding the pump shaft from the pump to the top of the well and entirely closing off the water in the well from the shaft and its bearings, is the only element in any one of the claims as to which there is persuasive evidence in the record both as to patentability and infringement. The word "closed" in claim 9 seems to mean as much as the words "entirely closed" in claim 20. So it seems that complainant's case must rest on claims 9 and 20 and on the element mentioned which is contained in each of these claims. If this is true, it seems quite unimportant what construction is given to the words "jointed pump shaft" of claim 9, since there are no such words in claim 20. So the only question to be decided is whether complainant's protecting casing for a pump shaft which entirely incloses the shaft from water from the well is a patentable device and is infringed by defendant's pump shaft and casing. If it is, then recovery could be had under claim 20 in any event, if not under claim 9 also. If it is not, then no recovery could be had under any one of the four claims relied upon.

[1] It seems quite clear that the idea of a protected casing for a pump shaft without restrictive interpretation would contain no novelty and would not be patentable, and, if this element in the patent is given the unrestricted meaning that its language admits of, it would destroy the claim. The contention of the defendant is that it should be given the unrestricted generic meaning suggested by its broad language, and that of complainant, that the specifications should be looked to to interpret the claim, and that it should be held to mean only a protective casing of the kind and with the functions set out in the specifications. It seems that the complainant's contention is sup-

ported by the authorities cited in his supplemental memorandum and that the argument that the patent granted by the government should be construed so as to prevail rather than be forfeited, since that must have been the intention of the Patent Office, is a sound one, for limiting the breadth of the language of the claim to the disclosure of the specifications of the patent, if necessary to sustain the patent. If so limited, it would seem that the protective casing intended to be covered by the claim was one of the kind described in the specifications and having the three functions attributed to it by the specifications, namely: (1) To exclude water and detritus from the shaft and its bearings; (2) to provide a means of lubricating the bearings of each section of the shaft from the top of the well without removing the apparatus from it; and (3) to align the bearings and the shaft so as to prevent lateral displacement in the well and keep the shaft in a vertical position.

[2] Giving the claim this significance, it fairly appears from the record, as we see it, that there was no protective casing in the prior art of the kind and with the functions of that of the patent in suit. It also seems fairly to appear from the record that such a protective casing as that set out in the specifications contained novelty enough to constitute invention. The fact that the record shows that there was for some time an unfilled want for some such apparatus as that disclosed by the patent in the deep well irrigating industry is persuasive that the idea involved invention. In this respect the cross-examination of the witness W. B. St. John, a witness for the defendant, especially that part of it after page 572 of the record, is convincing that Layne filled a long-felt need in the deep well irrigating business by his protective casing, and had invented a practicable and valuable improvement in that art and one entitled to protection for that reason, though theoretically its novelty and patentability may admit of doubt.

If the idea is considered patentable, the last question is whether the defendant's pump infringes; that is, whether his pump contains the element of a closed shaft casing in the sense to be attributed to that element in the claim of the patent in suit, i. e., one of a kind described in the specifications of the patent and having the same three functions. The defendant denies that his pump shaft casing performs any one of the three functions attributed to that of the patent in suit. He denies that it is a closed casing in any true sense. It seems not to be closed so far as concerns the entrance of air. However, the proper interpretation of the words "closed casing" is a closure only against what is necessary to be excluded for the successful operation of the invention, and that, in this case, as we understand it, is water and sand, because when not excluded the first corrodes and the second wears the shaft and its bearings. It seems also true that the closure against water is only partial, since the lower bearing of defendant's apparatus is not within the inclosing casing, though the intermediate and top bearings are. So it seems doubtful whether the defendant's pump casing keeps the water from the shaft and bearings when it is not in operation, and the argument is that in the rice country, where it is principally used, it remains out of service

nine months of the year. For these reasons, it is argued that the defendant's casing is not a closed one, even against water and sand. However, the record shows that protection against water and sand is afforded by defendant's casing to all but one of the bearings and to the shaft in the same degree as by that of the patented casing, at least during the period of the pump's operation, and that the protection afforded by defendant's casing is different only in degree from that afforded by the patented casing. The closure in the patented casing is effected by. stuffing boxes as well as by the presence and downward pressure of the oil between the bearings and the shaft, which serves to keep the water from pressing upward into the shaft casing between the bearings and the shaft. The closure in defendant's casing is effected by the last method only, and without the use of packing or stuffing boxes. Each casing serves to effect at least a partial closure against the water and sand. The difference is one of method and degree only, and for that reason it seems that the defendant's casing infringes this element of the patent, at least to some extent.

The second function of the patented casing is that of providing lubrication for the bearings. In both casings, that of defendant as well as that of complainant, the oil is put in the apparatus at the top and passes through the bearings from the top through the intermediate to the lower bearing, being retained for a time above each bearing and serving in this way not only to lubricate each bearing, but also to help close the shaft casing against the ingress of water and detritus. The defendant's casing and that of the patent in suit perform this function to substantially the same extent, though the respective bearings as to the means for the flow of the oil through them are somewhat differently constructed.

The third function performed by the shaft casing of the patent in suit is that of aligning the bearings and the pump shaft so as to keep the latter in a vertical position in the well. In the absence of intermediate support, the tendency of the shaft, if suspended only from the top, would be to swing laterally in the well, and so get out of alignment. This is corrected by taking advantage of the downward pressure of the shaft due to gravity, in connection with the intermediate bearings through which the shaft passes. The defendant contends that his casing, after the pump is in operation, is suspended from the top bearing exlusively, and that the lower bearing performs no function after the casing is fixed in position in the well, and that the intermediate bearings are functionally different from those of the patent in suit. We must confess that we are not mechanics enough to determine with any assurance from the record the merits of these respective contentions, and it seems that the question of infringement, like that of patentability, is a close one. However, the cross-examination of the defendant's witness St. John has convinced us that as a practical matter Layne has invented something new and valuable in the art of deep well pumping for irrigation, and that the Van Ness pump appropriated, at least in part, the invention of Layne in respect to the advantages of the closed pump casing, as to protection and lubrication. On the other side, the evidence of the defend-

ant's witness Leroy Parker is persuasive that from a technical point of view Layne's pump shaft casing was not patentable, and that, if it was, it was not infringed by Van Ness' casing.

Comparing the conceded practical benefit that has been derived from Layne's patented pump with the theoretical argument of the defendant, we have come to the conclusion that the former should prevail, and that claim 20 of the complainant's patent should be sustained, and that the defendant's apparatus should be held to infringe it in the one respect of a closed casing for the pump shaft of the design and with the triple function attributed to it in the specifications of Layne's patent.

The decree appealed from is correct in so far as it recognizes the validity of the patent and finds the appellee infringing the twentieth claim thereof. It is therefore amended so that the first, second, fifth, sixth, and seventh paragraphs shall read as follows:

"(1) That the letters patent of the United States, issued to Mahlon E. Layne, on May 29, 1906, bearing the number 821,653, are good and valid in law as to the claim 20, which is as follows: (20) The combination of a well casing, a rotary pump therein, and a line shaft for the pump entirely closed off from the water in the well.

"(2) That the said Mahlon E. Layne was the first, true, and original inventor of the invention and improvement described in said letters patent, and particularly recited in said claim 20."

"(5) That the defendant Marvin B. Van Ness has infringed upon said letters patent No. 821,653, and particularly the said claim 20, and upon the exclusive rights of the complainants under the same.

"(6) That the complainants recover of the defendant the profits, gains, and advantages which the said defendant has received or made or which have accrued to him by the manufacture, use, or sale of apparatus in violation of said claim 20 of said letters patent No. 821,653, and that the complainants do recover the damages resulting from said infringement.

"(7) That a perpetual injunction issue out of and under the seal of this court directed to the said defendant Marvin B. Van Ness, perpetually enjoining and restraining him, his servants, agents, attorneys, employés, workmen, and confederates, and each and every one of them, as well as all other persons acting by, through, or under him, or any of them, from directly or indirectly making, using, or selling apparatus containing the invention covered in and by the said claim 20 of said letters patent No. 821,653."

And as thus amended is affirmed; appellee to pay the costs of this court.