GETTY v. LAYNE et al.

(Circuit Court of Appeals, Fifth Circuit. January 5, 1920. Rehearing Denied February 18, 1920.)

No. 3384.

PATENTS ⬥�wür328—PATENT FOR WELL MECHANISM VALID, BUT NOT INFRINGED.
The Layne patent, No. 821,653, for well mechanism, *held* valid, but not entitled to the wide range of equivalents of a pioneer patent; also *held* not infringed.

Appeal from the District Court of the United States for the Western District of Louisiana; George W. Jack, Judge.

Suit in equity by Mahlon E. Layne and others against Fred I. Getty. Decree for complainants, and defendant appeals. Reversed.

R. E. Milling, of New Orleans, La., and Francis M. Phelps, of Washington, D. C., for appellant.

Paul Synnestvedt and Harvey L. Lechner, both of Philadelphia, Pa., Jesse R. Stone, of Houston, Tex., J. D. Wilkinson, of Shreveport, La., and Walter P. Armstrong, of Memphis, Tenn., for appellees.

Before WALKER, Circuit Judge, and GRUBB and ERVIN, District Judges:

GRUBB, District Judge. This is an appeal from a decree of the District Court for the Western District of Louisiana in favor of the plaintiffs in the District Court, the appellees in this court, and against the appellant in this court, who was the defendant in the District Court. The effect of the decree was to sustain the validity of letters patent issued to the appellee, Mahlon E. Layne, May 29, 1906, for a well mechanism and numbered 821,653, and also to find that the defendant had infringed the patent by a patented construction of his own. The same patent has been twice heretofore passed on by this court, and its validity twice sustained. El Campo Machine Co. v. Layne, 195 Fed. 83, 115 C. C. A. 115; Van Ness v. Layne et al., 213 Fed. 804, 130 C. C. A. 462. We think the defendant showed no sufficient reason for a departure from our previous decisions sustaining the patent, and that the District Court was correct in determining the question of its validity in favor of the plaintiffs.

The remaining question is that of infringement. The merit in Layne's invention, protected by the patent sued on, was that it provided a pump for deep wells, by avoiding the necessity of having a wide pit at the top of the well, and so was capable of being used in drilled wells, and those drilled narrowly and to a comparatively great depth. Doing away with the wide pit at the top made it necessary that the adjustment and lubrication of the well mechanism be done from the surface, instead of from the bottom of the pit. The problem that confronted Layne was to devise a mechanism that could be placed and kept in position, oiled, and operated from the surface. This required adjustment, lubrication, and protection of the bearings and shaft, after the well mechanism had been lowered into the drilled hole, and without the necessity of the removal of it therefrom. The Crannell patent was intended for use in a wide pit, into which descent was possible, and so Crannell was confronted with no such problem. The limited depth of the pit, in which the Crannell patent was to be used, made it also unnecessary to use a jointed shaft and intermediate bearings. Layne solved his problem by the use of a jointed shaft with intermediate bearings, lubricated from the top to the bottom by gravity, and protected from the water and sand of the well by being inclosed in a casing, which excluded both sand and water from the bearings and shaft. He accomplished its adjustment to vertical positions in the well hole by suspending the shaft, pump and casing from the top of the well, and by a system of wedges holding the well mechanism in position when adjusted. The suspending of the well mechanism from the top also enabled Layne to keep the shaft in alignment through the added stiffness given by the downward thrust of the weight of the pump and shaft. This downward thrust also helped to effect the closure at the lower bearing against the entrance of sand and water. However, the specifications of Layne's patent show that he relied upon stuffing boxes at the top and bottom of the shaft to effect the closure, and to prevent entrance of water and sand, to the detriment of the shaft and bearings.

The twentieth claim of the patent—that sustained in the case of Van Ness v. Layne, supra—covered "the combination of a well casing, a rotary pump therein, and a line shaft for the pump *entirely closed off from the water in the well.*" Validity was given this claim by defining a closed shaft to be one having the three functions of (1) aiding the alignment of the shaft in the well casing; (2) providing for lubrication of the shaft and bearings; and (3) protecting the shaft and bearings from water and sand. The question of adjustment did not enter into the discussion in that case. The closed shaft of the claim was restricted, as above stated, by referring it to the character of inclosed shaft described in the specifications of the patent. It was only by giving the claim this restricted meaning, and limiting it to the description in the specifications, that the claim could be sustained. We must then look to the specifications to determine the character of an inclosed shaft covered by the Layne patent. The shaft there described was a jointed shaft with top, intermediate, and lower bearings, means of adjustment and fixation, means for lubrication, means for alignment in the well,

and means for preventing water and sand from reaching the shaft and bearings. The Layne patent too nearly resembles the Crannell patent to be called a pioneer patent, though it did accomplish a revolution in the well-drilling industry. Its merit was in adapting the Crannell type of pump to a narrow and deep well hole, in a way that has been held by us to exhibit novelty. While the substitution of mere mechanical equivalents for the means adopted by Layne could not avoid infringement of his patent, it is also true that the range of equivalents cannot be enlarged upon the idea that his patent was a pioneer one in the pump art. Its advance over Crannell prevented Crannell from being considered by us an anticipation, and was enough to show novelty, but it stops there. The Layne patent must rest, not upon the idea of closure, which would not be patentable apart from the method by which it was accomplished, but upon the means of its accomplishment, as disclosed by the specifications of his patent. The means which he adopted to accomplish adjustment we are not here concerned with, because the Getty pump has no means of adjustment up and down in the well. It is also true that the Getty pump cannot be held to infringe the means that Layne used to keep his shaft properly aligned, since that was accomplished by suspending the mechanism from the top of the well, while Getty's pump mechanism receives its support by resting on the bottom of the well.

That leaves remaining for consideration the comparison of the respective methods used by Layne and by Getty for lubrication and for closure. Layne's method of lubrication was to put the oil in at the top and to permit it to descend to each of the bearings, and remain stagnant within the shaft casing until ejected from the top after it had become spent by air pressure through an air vent. When it was ejected, it was replaced by clean oil from the top again. On the other hand, the oil was confined at the bottom of the well by use of a packing or stuffing box. Getty adopted a circulatory system of lubrication. By it the oil was also introduced from the top, and descended to the lower bearings by gravity. However at the bottom there was only a partial obstruction to its exit, presented by a long sleeve bearing. Its passage out from the shaft casing was automatic and continuous, so that there was a constant and free flow of lubricant from the top of the line shaft, throughout its length, and out through its bottom. This method was claimed to be necessary to Getty's device, because wear on the upper bearing required a continuous supply of fresh oil for its proper lubrication. These functional differences between the stagnant and circulatory systems of lubrication prevent their being considered as merely mechanical equivalents.

Layne, according to the specifications of his patent, effected his closure at the top and bottom of his shaft by the presence of stuffing boxes, assisted by the effect of a downward thrust bearing and collar. In practice, Layne soon abandoned the use of packing boxes, substituting therefor a long sleeve bearing and retaining the collar. The downward thrust of the weight of the shaft and pump, together with the downward pressure of the column of oil in the shaft casing, accomplished his closure. While the pressure of the column of oil against the out-

ward column of water is now urged by Layne as important in his means of closure, it is true that it is not stressed, as such, in the disclosure of his patent. Principal reliance is there placed on the use of stuffing boxes. Getty's mechanism is free from any such closure devices, either against the flow of oil outward or the flow of water inward, except the long sleeve bearing, without either a collar or the advantage of the downward pressure from the suspended apparatus. Getty relies for closure upon the downward pressure of the oil column balancing the upward pressure of the water column. His mechanism prevents him from availing of packing boxes to effect closure, because they would equally prevent the exit of the oil, which is a necessary feature of his circulatory system. The same reason would prevent his using a thrust bearing with a collar. In addition, the fact that his pump, shaft, and casing are supported on the bottom of the well, and are not suspended from above, deprives him of the downward thrust, due to the weight of the apparatus as a means of closure.

We think Getty has accomplished closure and lubrication by means so functionally different from Layne's disclosure in his patent, that they cannot be said to be mere mechanical equivalents, but rather distinct methods of attaining the same object; the object itself not being patentable. The mere fact that Getty's closure is not complete, or not as complete and effective as that of Layne, is an unimportant fact. The material difference lies in the fact that Layne's patent effects the closure by physical obstructions, such as packing boxes and thrusts bearings, aided incidentally only by the pressure of the oil column, while Getty's partial closure is effected by balancing the pressure of the column of water outside the shaft casing against the pressure of the oil inside the casing, without the use of physical obstruction. The difference is not one without a reason, and adopted merely to avoid infringement. It is made necessary by the different method of support and lubrication used by Getty from that disclosed in Layne's patent. It is true that in the Van Ness Case this court stated that Van Ness used the pressure of the oil column, and did not use packing boxes, to effect closure. Van Ness, however, did suspend his well mechanism from the top of the well, and did use thrust bearings and a collar to help close the bottom of the shaft casing. The mechanism in the El Campo Case, which was held not to infringe Layne's claims numbered 4, 9, and 20, was one that was also supported at the bottom of the well, instead of being suspended from the surface. Referring the closed shaft of Layne to the description in the specifications of his patent, as we must do, we think the differences from Getty's mechanism with respect to means of alignment, lubrication, and closure are so important that Getty's differing means should not be held to be mechanical equivalents, and should not be held to infringe the closed shaft of Layne's patent.

The decree of the District Court is therefore reversed, and the cause remanded to that court for further proceedings in conformity with this opinion; and it is so ordered.