## LAYNE & BOWLER CORPORATION v. WESTERN WELL WORKS, INC., ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 278.   Argued March 5, 1923.—Decided April 9, 1923.

A writ of certiorari, issued to settle a supposed conflict of decision between two circuit courts of appeals concerning the validity and scope of a patent, will be dismissed, as improvidently granted, when later examination proves that such conflict did not exist. P. 392.

Writ of certiorari to review 276 Fed. 465, dismissed.

CERTIORARI to review a decree of the Circuit Court of Appeals reversing a decree of the District Court which enjoined the respondents here from acts found to be in-

fringements of petitioner's patent and directed an accounting. The Court of Appeals found no infringement and for that reason ordered that the bill be dismissed.

*Mr. Frederick S. Lyon,* with whom *Mr. William K. White* and *Mr. Leonard S. Lyon* were on the briefs, for petitioner.

*Mr. Chas. E. Townsend,* with whom *Mr. Frederic D. McKenney* and *Mr. Wm. A. Loftus* were on the briefs, for respondents.

*Mr. David P. Wolhaupter, Mr. Raymond Ives Blakeslee* and *Mr. Charles C. Montgomery,* by leave of court, filed a brief as *amici curiae.*

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is an ordinary patent case. There was no reason for granting the application for a writ of certiorari except upon the ground that the Circuit Courts of Appeals for the Fifth and the Ninth Circuits had differed in respect to the validity and scope of the patent and that uniformity required a decision from this Court. The arguments and the briefs have aroused further inquiry in the minds of the Court as to whether there was in fact any conflict between the decisions of the two circuit courts of appeals, and whether the writ of certiorari was not improvidently granted.

The Layne patent, now owned by the Layne & Bowler Corporation, the petitioner, was for apparatus for drawing water from deep wells, driven or artesian, and especially for adjusting a pump in them. In such wells, it is essential that the adjustment, the alignment and the lubrication should be effected from the top because the bore of the well is so small that the operator can not descend to the pump. The Layne patent covered many

different devices for assembling the various parts at the top so that they could be thrust down the well hole and be adjusted in place at the bottom, so that the shaft of the rotary pump should be held in proper alignment as it rotated, so that it should not be clogged with sand and water as the pumping went on, and so that the shaft and the bearings in which it moved, placed at intervals from top to bottom, should be lubricated. To effect these objects the inventor used a casing or cylinder surrounding the shaft, divided them both into sections, united one section to another by a sleeve or screw thread and in these sections pushed the apparatus down the well hole. There was a bearing at each end of each section of the casing in which the shaft was to revolve. Layne assembled with this shaft and casing, wedges and spiders to hold the two in place against the sides of the well hole. The rotary pump was held suspended in alignment by the weight of the casing and was closed from the casing by a packed bushing in which the shaft revolved and which prevented water and sand and other detritus from clogging the shaft and its bearings. The water from the pump was carried to the top by a separate pipe. The lubrication was effected by pouring the oil in at the top of the casing, and allowing it to leak through each bearing to the bottom of the casing whence it was drawn at intervals out of the casing by forcing air through an air vent at the top of the casing. The pump with the rotary shaft was old, the use of sections was old generally though it does not seem to have been applied in this particular field before, and the closed casing or cylinder surrounding the shaft was old. In a prior patent to Crannell for a pump in wells large enough to permit a man to go to the bottom, a rotary shaft with a cylindrical casing closed against the pump is shown.

In practice, Layne did not use packing and bushing but relied on a long sleeve to keep water and sand out of the

casing. Nor did he ever use the wedges and spiders for alignment.

The three claims sued on in this case were Nos. 9, 13 and 20, as follows:

9. In a well mechanism, the combination with a pump casing of a rotary pump of a jointed pump shaft and a closed casing surrounding the pump shaft from the pump to the top of the well.

13. The combination with a pump and its actuating shaft of a sectional casing therefor, provided at each end of each section with a fixed block with bearings for the shaft, the casing being closed at the top and provided with an air vent.

20. The combination of a well casing, a rotary pump therein, and a line shaft for the pump entirely closed off from the water in the well.

In 1912, in an infringement suit the validity of this patent and of claim No. 13 was considered by the Circuit Court of Appeals of the Fifth Circuit and sustained. Infringement by defendant of that claim was found and a decree for damages entered. *El Campo Machine Co.* v. *Layne,* 195 Fed. 83. The decision is a *per curiam* and there is no discussion and no description of the defendant's device in the report.

In 1914, the same Circuit Court of Appeals had to consider the patent again in *Van Ness* v. *Layne,* 213 Fed. 804. The claims relied on were the 4th, the 9th, the 13th and the 20th. The 4th was found not to be infringed, and as we are not concerned with it here, we can disregard it. The court found that Van Ness, the alleged infringer, did not use an air vent to force his oil out of the casing as we are informed by this opinion the infringer El Campo had done in the previous case. So it was held that Van Ness did not infringe claim No. 13. The court held that the jointed feature of the shaft made part of claim 9 added nothing to the novelty or patentability of

the device and that claims No. 20 and No. 9 really covered the same ground. The court held, however, that the use of the entirely closed casing to exclude water and detritus from the shaft and its bearing, to secure lubrication of the bearings from the top and to align the bearings and shaft so as to prevent lateral displacement in the well and keep the shaft in a vertical position was a novelty and did supply a want in the field of deep pumps. As to infringement the court held that the casing of Van Ness's apparatus, although not so completely as the patented device, did keep the water and detritus from all the bearings but one on the shaft; that the lubrication was effected in practically the same way, and, though this was very doubtful in the mind of the court, the alignment was preserved by the downward thrust of the suspended casing and bearings. Accordingly it was held that the 20th claim was infringed.

In *Getty* v. *Lane,* 262 Fed. 141, the same court considered the patent a third time. In its opinion, it said (p. 143):

" The Layne patent too nearly resembles the Crannell patent to be called a pioneer patent, though it did accomplish a revolution in the well-drilling industry. Its merit was in adapting the Crannell type of pump to a narrow and deep well hole, in a way that has been held by us to exhibit novelty. While the substitution of mere mechanical equivalents for the means adopted by Layne could not avoid infringement of his patent, it is also true that the range of equivalents cannot be enlarged upon the idea that his patent was a pioneer one in the pump art. Its advance over Crannell prevented Crannell from being considered by us an anticipation, and was enough to show novelty, but it stops there. The Layne patent must rest, not upon the idea of closure, which would not be patentable apart from the method by which it was accomplished, but upon the means of its accomplishment, as disclosed by the specifications of his patent."

The court then held that alignment in the alleged infringement was secured by resting on the bottom of the well and not by suspension from the top and the downward thrust of the weight. It further held that Layne effected his lubrication by stagnant oil removed by forced air at intervals, whereas the alleged infringer had a circulatory system by which the oil after leaking through the bearings escaped from the bottom into the water around the pump, and that finally the closure of the casing against water and detritus was effected not by a bushing or packing but by the downward flow of the oil. This led to a dismissal of the bill.

The Circuit Court of Appeals of the Ninth Circuit in this case instead of differing from that of the Fifth Circuit, seems, on a careful examination of the opinions and the infringing devices under consideration in the different cases, to have followed the opinions in the Fifth Circuit. It sustained the validity of the 9th, 13th and 20th claims. It did not greatly consider the 13th claim because it was as clearly not infringed by the respondent here, as it was not infringed by the Van Ness device in the Fifth Circuit case. The Ninth Circuit Court held as the Fifth Circuit Court had held in the *Getty Case,* that the scope of the Layne patent claims was much restricted by the prior art and that a circulatory system of lubrication was not the same as a closed stagnant system. The entirely closed casing as an element of the 20th claim furnishing a stagnant lubrication did not, therefore, find its equivalent in the casing of the respondent which was open at the bottom to permit a circulatory lubrication.

It is manifest from this review of the conclusions in the two circuits as to the validity of the Layne patent and the proper construction to be put upon the 9th, 13th and 20th claims, that they were really in harmony and not in conflict and that there was no ground for our allowing the writ of certiorari to add to an already burdened

docket.   If it be suggested that as much effort and time as we have given to the consideration of the alleged conflict would have enabled us to dispose of the case before us on the merits, the answer is that it is very important that we be consistent in not granting the writ of certiorari except in cases involving principles the settlement of which is of importance to the public as distinguished from that of the parties, and in cases where there is a real and embarrassing conflict of opinion and authority between the circuit courts of appeal.   The present case certainly comes under neither head.

Precedents for dismissing a writ of certiorari improvidently granted are found in *Furness, Withy & Co.* v. *Yang-Tsze Insurance Association,* 242 U. S. 430, and in *United States* v. *Rimer,* 220 U. S. 547.

*Writ of certiorari dismissed.*