PELTON v. WILLIAMS.

(Circuit Court of Appeals, Sixth Circuit. June 16, 1916.)

No. 2822.

1. PATENTS ⬤⟫328—INFRINGEMENT—HEATING SYSTEM FOR AUTOMOBILES.

The Williams patent, No. 873,399, for a heating and ventilating system for automobiles, as the claims were amended to meet the requirements of the Patent Office is for an indirect or circulatory system having as one of the elements of the combination a register which may be opened and closed by the occupants of the car, and is not infringed by a system which heats by direct radiation and has no register.

2. WORDS AND PHRASES—"DIRECT AND INDIRECT HEATING SYSTEMS"—"RADIATING AND CIRCULATORY HEATING SYSTEMS."

All heating apparatus is of one or the other of two types, direct or indirect. In the direct, the heating body or box is in the room to be heated and the radiation is direct; in the indirect, the heating box is outside the room to be heated, and it heats a body of air in passing over it, which body of air is then conducted to the room to be heated, thus indirectly accomplishing the result. The two systems are also distinguished as "radiating" and "circulatory."

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John H. Clarke and Arthur J. Tuttle, Judges.

Suit in equity by Nathan W. Williams against Clyde S. Pelton, trading as the Alton Sales Company. From an order granting a preliminary injunction, defendant appeals. Reversed.

M. W. Church, of Washington, D. C., for appellant.
S. W. Banning, of Chicago, Ill., for appellee.

⬤⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. [1] This is an appeal from an order granting a preliminary injunction against appellant for alleged infringement of letters patent No. 873,399, issued December 10, 1907, to appellee. The pleadings, so far as reference to them is necessary, are in the usual form for presenting issues of infringement and validity of the patent in suit. We do not find it necessary to pass upon the validity of the Williams' patent, for we are convinced that the infringement alleged cannot be sustained. The patented device is for alleged improvements in a combined heating and ventilating system for automobiles. The declared object of the invention is—

"to utilize the heat of the escaping products of combustion for heating purposes, by tapping the exhaust pipe intermediate the engine and muffler and conveying a portion of the heated waste gases to a heater located beneath the floor of the automobile for the purpose of heating the air supplied to the closed vehicle body."

There was very likely distinct merit and patentability in the broad idea that part of the gases from the muffler pipe might be diverted through a by-pass and box with an independent discharge to the outer air, whereby this box would serve both as a supplemental muffler relieving back-pressure and as a radiator box for heating the car; but this broad idea was neither new with Williams nor does it purport to be protected by his claim.

Kempshall certainly had the broad idea. He says that his object is to utilize the exhaust gas for either foot-warmer or other form ·of heater, located at such place as may be convenient and serviceable to the rider, and that the secondary muffler may be adapted as a foot-warmer and placed in any suitable location, or it may be of any form and placed in any location in the wagon, to serve as a heat radiator coil.

The same idea is shown by British patent No. 1,820, of 1901, and also by Dunham & Fox, No. 707,908. The latter does not specify that the radiator box is a supplementary muffler; it might perhaps be the main and only muffler; but the idea of using a muffler as a radiator box for direct heating is clearly shown.

[2] All heating apparatus is one or the other of two types, direct or indirect. In the direct the heating body or box is in the room to be heated, and the radiation is *direct;* in the indirect the heating box is outside the room to be heated and it heats a body of air in passing over it, which body of air is then conducted to the room to be heated, thus *indirectly* accomplishing the result. The two systems are also distinguished as "radiating" and "circulatory." In the heating of houses the ordinary hot-air furnace is circulatory or indirect; the more common steam system, with a radiator in each room, is radiating or direct; though steam heating is sometimes applied on the indirect system by passing fresh air from outside over the body of steam coils in the cellar and carrying this heated air into the room through pipes and registers. ·

It is clear, and is conceded, that the Williams' patent belongs to the circulatory system. If there was otherwise doubt about this, it would be removed by the Patent Office proceedings. Williams' original claim 3 seemingly referred to a circulatory or indirect device, because it provided for an air inlet port and air outlet port from the radiator box.

When it was rejected on several references, he undertook to avoid them merely by specifying the function of his discharge from the radiator box, viz.: "For preventing increased or back-pressure on the engine." It was again rejected on the same and other references, and he amended by specifying the main muffler as an outlet, and also by specifying that the intake opening into the radiator box was for supplying fresh air. It was still again rejected, with the requirement that the claim should include the register as an element of the combination. By the "register" the Patent Office meant the opening in the floor of the car, provided with an ordinary valve or with gates for opening and closing; nothing else could have been intended. Williams says (in line 110, p. 2), that the register "may be of any suitable character to *regulate* the amount of heat supplied to the car," and (line 25, p. 2), that "the heated air will be admitted in *any suitable quantity* through the register in the floor of the car, which is *under the control of the occupant* and may be *opened or closed* to any desired extent." This is Williams' own declaration of the meaning of register. "A patentee is at liberty to supply his own dictionary; and a claim is neither enlarged nor limited by taking its terms in the sense given in the lexicon of the specification." Kennicott Co. v. Holt Ice & Cold Storage Co., 230 Fed. 157, 160, —— C. C. A. —— (C. C. A. 7). In response to this requirement, Williams inserted in his claim as an additional element "a register in communication with the inclosing box for controlling the flow of heated air therefrom." He thus not only made a register, so defined, an element of his claim, but more expressly limited his patent to the indirect, as contrasted with the direct, system of heating. This same limitation is emphasized by the title and introductory paragraph of the patent, which specifies that he has in mind a "heating and ventilating system."

Pelton belongs to the direct or radiating class. He had two forms of his device. In the first, the radiating coil was below the floor of the car, and it was surrounded by a tight box, except as it carried an open grating on top and in the floor of the car. It might be possible to consider this as a radiator box. In the second form, the radiating coils were in the body of the car, and surrounded by no box, but partly covered by a protecting screen or hood. So far as concerns the feature of direct or indirect heating the two are alike; both are direct. Each set up a circulation within the room itself, because colder air falls to the bottom of the room, is heated, and then rises, but neither one takes any body of fresh air from the outside, heats it, and then discharges it into the room. In the second form the radiator is set out into the room; in the first form the radiator is in a recess, which in fact is part of the room. It is a mistake to suppose that the water-drip hole, the size of a lead pencil, in the bottom of the casing in the

first form is an opening for the admission of fresh air from the outside. It was not made for that purpose; only a negligible amount of air could get in; and when the car is in motion there would be a suction tending to pull the air the other way. So it is also a mistake to suppose that the devices belong to the circulatory system, because air from the inside of the car passes down in contact with the radiator and then rises; the same thing is true of every direct radiating coil in any room; the grating in the floor in one form and the perforated screen in the other have *nothing to do* with the air circulation; lay the coil, uncovered, on the car floor and we get the same "circulation."

The fact that the two heaters (Williams' and Pelton's) belong in two systems is emphasized by the register. An opening and closing register is essential to the proper operation of the indirect system; so the Patent Office properly insisted that it should be included as an element. A direct system uses no register, but controls the situation by turning off the heat from the radiating coil, so that the coil ceases to radiate. This is what Pelton does. He has a grating in the floor of his car, but no register whatever. He controls the temperature by closing the valve which admits heat to the radiating coils, so that they cease to radiate, just as in a steamheated room you turn off the steam from the radiators.

No permissible stretch of language can make this valve in the heating pipe in a direct system over into a register in a heated air pipe in an indirect system. In a vague and broad sense there is equivalency because they are two known methods of controlling temperature, but Williams, in order to get his patent, was compelled to limit himself to a controlling register, and he must be held to his limitation.

It is another way to get at it to say that even if Williams' claim 3, as originally rejected, and then his claim 1, as twice rejected, might be so read as to cover Pelton, still, in order to get his patent, he inserted, and accepted as a limitation, a register which Pelton does not have. It is a typical case of estoppel by Patent Office proceedings.

It results that the order of injunction must be reversed and the cause remanded, with instructions to enter an order directing the clerk of the court below to return all moneys received by him from appellant in pursuance of the injunction order mentioned, and also dismissing the bill, with costs. Smith v. Vulcan Iron Works, 165 U. S. 518, 525, 17 Sup. Ct. 407, 41 L. Ed. 810; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 495, 20 Sup. Ct. 708, 44 L. Ed. 856.