## PETERSEN v. GENERAL SEAFOODS CORPORATION et al.

No. 2793.

Circuit Court of Appeals, First Circuit.

June 30, 1933.

As Amended Aug. 16, 1933.

George W. Hansen, of Chicago, Ill. (Jones, Addington, Ames & Seibold and Sidney Neuman, all of Chicago, Ill., and Nathan Heard and Frederick A. Tennant, both of Boston, Mass., on the brief), for appellant.

Hector M. Holmes, of Boston, Mass., and W. B. Kerkam, of Washington, D. C., for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

The original bill in equity brought by the appellant was against the General Seafoods Corporation, and alleged an infringement by the General Seafoods Corporation of two patents owned by the appellant, who will be hereinafter referred to as plaintiff, said patents being numbered, respectively, No. 1,681,-009 and No. 15,683, the latter being a reissue patent. So much of the plaintiff's bill as related to patent No. 1,681,009 was later dismissed on plaintiff's own motion.

After answer to the original bill by the General Seafoods Corporation, the plaintiff filed a supplemental bill in which it joined the Frosted Foods Company, Inc., as codefendant, and alleged that the patent No. 1,773,079, known and hereinafter referred to as the Birdseye patent, originally issued to one Clarence Birdseye and by him assigned to the Frosted Foods Company, Inc., and the reissue patent, No. 15,683, of the plaintiff are interfering patents; that the defendants have continued to infringe the plaintiff's patent No. 15,683; and praying that the defendants Frosted Foods Company, Inc., and the General Seafoods Corporation be enjoined from manufacturing, producing, selling, or offering for sale any apparatus, processes, methods, or comestibles embodying the invention of the plaintiff described in patent No. 15,683, and that the so-called Birdseye patent No. 1,773,079 be adjudged inoperative and void as an interfering patent within the provisions of section 4918, R. S. (35 USCA § 66).

After hearing the plaintiff's testimony and such documentary evidence of the plaintiff as the court deemed admissible, the court sua sponte dismissed both the plaintiff's original and supplemental bills. From his decree the plaintiff appealed, alleging as error:

(1) That the court erred in finding as a fact that the scope of the Petersen reissue patent is limited to a process of handling and freezing comestibles, which consists essentially of packing them tightly in a container and immersing them in a refrigerant.

(2) That the court erred in finding as a fact that the process shown in the Petersen reissue patent is not infringed by a process of freezing, which consists of placing the food between two metal surfaces and spraying the outside of those surfaces with a freezing mixture.

(3) That the court erred in holding as a matter of law that the defendants' process complained of did not infringe claim 7 of the Petersen reissue patent No. 15,683.

(4) That the court erred in finding as a matter of law that the Petersen reissue patent No. 15,683, and Birdseye patent No. 1,773,079, are not interfering patents within the provisions of section 4918 of the United States Revised Statutes.

(5) That the court erred in excluding certain evidence offered by the plaintiff.

Other formal assignments were made but raised no issue not covered by the above assignments.

The law is well settled that, if upon the face of the pleadings or the plaintiff's evidence there is no infringement or interference, the court may dismiss a bill of this nature sua sponte. Bronk v. Charles H. Scott Co. (C. C. A.) 211 F. 338; Pelton v. Williams (C. C. A.) 235 F. 131, 134; Chase v. Reliable Mfg. Co. (D. C.) 58 F.(2d) 676; Friend v. Burnham & Morrill Co. (C. C. A.) 55 F.(2d) 150.

The plaintiff's original bill alleged infringement of claims 1 and 7 of the plaintiff's patent. Plaintiff, however, does not now claim any infringement of claim 1, which related to the handling of comestibles, such as fish, for refrigeration en masse, but bases his claims on an infringement of claim 7, which reads as follows:

"The process of freezing a plurality of fish without appreciable evaporation of moisture therefrom which consists in tightly packing the fish within a comparatively deep, elongated, narrow container and thereby substantially minimizing air pockets within the container, and then immersing the container in a low temperature refrigerating liquid of a level not permitting the entry of the refrigerant into the container, but substantially on a par with or above the level of the comestible contained therein, whereby all parts of the fish may come into close proximity of the surrounding refrigerating liquid and whereby a rapid dissipation of heat takes place from the closely packed fish directly contacting with the container walls."

It is not necessary on the issue of infringement to consider the claims in the Birdseye patent. It is only necessary to consider whether the process used by the defendants in refrigerating comestibles, including fish, as described by the plaintiff, and in the application for the Birdseye patent and certain publications by Birdseye himself, infringes upon claim 7 of the plaintiff's patent No. 15,683.

The plaintiff's patent No. 15,683 is a process patent, the function of which is the refrigeration of "a plurality of fish" without appreciable evaporation of the moisture contained in them by (1) tightly packing the fish within a comparatively deep, elongated, narrow container, thereby substantially minimizing air pockets within the container; (2) then immersing the container in a low temperature refrigerating liquid to a point above the level of the top of the comestible contained therein, without permitting the refrigerant to enter the container, so that practically all parts of the fish in the container may

come into close contact with the metal walls of the container and be thus surrounded by the refrigerating liquid, whereby, through conduction, a rapid dissipation of heat takes place in the fish or comestibles in the container.

It is suggested that the Petersen patent is a pioneer patent, and therefore should be liberally construed, and that the Birdseye process, which performs the same function, though in a different manner, constitutes an infringement.

 If a pioneer patent, the inventor is entitled to a broad range of equivalents, but, if he has simply improved upon the prior art, he is entitled only to such equivalents as are included in his improvement. McCormick v. Talcott, 20 How. 402, 15 L. Ed. 930; Chicago & N. W. Railway v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Morley Machine Co. v. Lancaster, 129 U. S. 263, 9 S. Ct. 299, 32 L. Ed. 715; Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 S. Ct. 521, 47 L. Ed. 689; Vol. 1, Walker on Patents (6th Ed.) § 230, in which the author, interpreting the McCormick Case, says:

"The original inventor of a machine will have a right to treat as infringers all who make machines operating on the same principle, and performing the same functions, by analogous means, or equivalent combinations; even though the infringing machine be an improvement on the original, and patentable as such. But if the invention claimed, be itself but an improvement on a known machine, by a mere change of form or combination of parts, the patentee cannot treat another as an infringer, who had improved the original machine, by use of a different form or combination, performing the same functions. The inventor of the first improvement cannot invoke the doctrine of equivalents to suppress any other improvement which is not a mere colorable invasion of the first."

Again, in construing the Sayles Case:

"If one inventor, in a particular art, precedes all the rest, and strikes out something which underlies all that they produce, he subjects them to tribute. But if the advance toward the thing desired is gradual, so that no one can claim the complete whole, then each inventor is entitled to the specific form of device which he produced, and every other inventor is entitled to his own specific form, so long as it differs from those of his competitors and does not include theirs."

The desirability of preserving foodstuffs by refrigeration is no new discovery, or that it may be done by the application of cold or heat. The process of immersing a comestible to be preserved, such as fish, in a cold brine, or placing it in a closed container and immersing the container in a cold brine or in a liquid that will not congeal at a temperature far below the freezing point of water, is also old.

In view of the prior art in refrigeration processes, an early exemplification of which is recognized in the old and well-known ice cream freezer—which, while it produced a delectable comestible, had the disadvantage of requiring somewhat laborious manipulation—and the development of the art as outlined by the report in 1920 of the British Food Investigation Board on refrigeration of food products, and particularly fish, and, as admitted by Petersen in his application, we think the Petersen patent No. 15,683 cannot be deemed a pioneer patent, but is merely a step in the development of the art.

A patent for refrigerating fish by the salt and ice method was granted in this country as early as 1861. In 1889 a patent was granted in England to Everard Hesketh and Alexander Marcet. The invention claimed by them was described as follows:

"According to our invention, we freeze the meat or other perishable articles by massing cooled brine or other cooling medium into a tank or vessel or tanks or vessels of sufficient size to allow of the meat or perishable articles being wholly or partially immersed directly in the cold brine either *with or without a watertight covering to prevent contact with the brine, or we may place the meat or perishable articles in small watertight boxes of such a size as to just admit the carcase or article to be frozen or cooled, such boxes being wholly or partially immersed in the brine or cooling medium,* or such boxes may be of a sufficient size to admit a quantity of meat or articles to be frozen." (Italics supplied.)

The prior art before Petersen's experiments had advanced from the salt and ice process to the "sharp freezing process" in cold air chambers, and to the quick freezing process by immersing comestibles without or within a narrow air and water-tight container in a cold brine, and thus secure what is generally known in the art as "rapid or quick freezing," which includes freezing with sufficient rapidity so that the moisture in the fish or other food products will not form ice crystals sufficiently large to burst the cellular tissues of the food to be frozen, which results in more or less deterioration while be

ing preserved in storage, and after being thawed for consumption.

In the third paragraph of his application for his patent Petersen said: "I am aware that it has been proposed to freeze comestibles by partly or wholly immersing them in a cold brine, either with or without a water-tight covering so as to prevent direct contact with the brine. Also, it has been proposed to dispose a comestible in a water-tight box of such size to just contain the comestible which is to be frozen or cooled, such a box being wholly or partially immersed in a liquid refrigerant. Again it has been suggested to hang or dump fish in cans, such as ice cans, which are thereafter filled with water and then dipped into a brine bath in a manner similar to that employed in the making of artificial ice. With such freezing cans refrigeration is effected in a very short time and then the cans are subjected to thawing water in order to remove the frozen mold by slightly thawing it."

He points out as one of the improvements in the prior art which he claims his process has made that the fish or meat in his container is arranged to permit a minimum air space; but the advantage of excluding air from the comestible to be preserved is a well-known advantage in preserving food, either with application of cold or heat. The housewife processes her preserves to obtain a vacuum.

The advantage of keeping the comestible from contact with the refrigerant is not new. That had long before been realized from experience. The advantage of a quick freezing process had been scientifically established as early as 1915 and made public by scientists, with which Petersen was familiar.

The improvement Petersen gained by his method, if any, over the prior art, was chiefly through the shape of his containers. He made a pan in the form of a scoop with perforated bottom for the purpose of inserting small fish in his containers tightly packed. He then constructed a water-tight metal container, open at the top with handles on each side and narrower at the bottom, so that the scoop, or frozen fish, could be easily withdrawn therefrom, and of a depth, width, and thickness to permit convenient handling, and to bring the refrigerant in closer proximity to the fish when the container was immersed in the cold brine.

There was nothing new in the principles thus applied by him in his method of freezing fish. It was done by applying the refrigerant to the sides of the container and with-

drawing the heat from the fish by conduction. Ice cans of similar shape for making ice by immersion in brine had long before been known in the art. Petersen himself, in describing his process, said: "The fish are frozen in water-tight open top cans, somewhat on the order of old-fashioned narrow, flat ice cans." His process was also described in an exhibit put in by him as follows: "The fish are frozen as in the case of water in the ordinary ice-making can."

To some extent "quick freezing" prior to 1920 had already been commercially attained by immersing the fish directly in the brine. Direct contact with the brine, however, had a tendency to affect the comestible and cause it to lose its freshness. To remedy this trouble, water-tight containers were also in use prior to 1920, for what was termed block freezing, that is, the fish were inserted in a container which was filled with water to exclude all air, and then the container was immersed in brine, and, when frozen, the whole mass came out as a block and was then stored in a cold room. Rapid freezing was thus attained and preservation for long periods.

In 1920 Petersen tested out the Ottesen process, which originated in Denmark, under which fish were inserted directly in a cold brine, but found it was not adapted to commercial success in this country. He then applied his knowledge, gained from experience and of the prior art, to freezing the fish by inserting them in a deep, flat can, similar to the old ice cans, packing them tightly, and thereby excluding them from contact with the air except on top, unless his scoop was left in. He made his container narrower at the bottom so as to withdraw the scoop or the frozen fish more readily from the container after freezing.

There were no new principles involved in his method as described in his application or claims. The advantages and methods of securing quick freezing were well known; also of excluding air from the comestible and the comestible from contact with the brine; and of the narrow, deep container, in order to bring the fish more closely in contact with the refrigerant. He also knew of the advantage of the fish being packed tightly, but, if he knew of the advantage of pressure against the sides of his container, he did not claim it as an essential part of his process, as he now does in order to read his claim 7 on the claims in the Birdseye patent.

At most, he merely adopted well-known facts and physical laws, and combined them

to secure certain desirable results more efficiently than in the prior art. Assuming there is novelty in his invention, not being a pioneer invention, he cannot invoke the broad doctrine of equivalents.

A patentee is entitled to limit his claims in his patent to any extent that may seem desirable, but, having done so, his right to protection is also limited, since the claim actually made by the patentee is the measure of his right to relief. McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800. Petersen having elected in these proceedings to stand on claim 7, he is limited to such equivalents as are included in this claim, and to substantially the same means and mode of operation as therein described. International Signal Co. v. Vreeland Apparatus Co. (C. C. A.) 278 F. 468, 470.

We do not think the wrapping of fish, meats, vegetables, or fruit in moisture-proof cartons in which they are shipped and ready for delivery to the consumer, and passing them between two traveling metal belts which are open at the sides, by means of which metal belts the comestibles are continually under adjusted pressure, and while being carried through a "refrigeration zone" a cold brine is sprayed against both the top and bottom belt, which by the adjusted pressure are closely contacted with the top and bottom of the carton, which is the method of refrigeration employed by the defendants, is an equivalent of the immersion process of the plaintiff in a deep, elongated, narrow container, or in any way infringes upon the Petersen process described in claim 7. Petersen does not make pressure during refrigeration an essential element of his process.

The doctrine of equivalents, therefore, cannot expand the Petersen claim 7 to cover the Birdseye process. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; White v. Dunbar, 119 U. S. 47, 52, 7 S. Ct. 72, 30 L. Ed. 303; McClain v. Ortmayer, 141 U. S. 419, 425, 12 S. Ct. 76, 35 L. Ed. 800; Bryce Bros. Co. v. National Glass Co. (C. C. A.) 116 F. 186; Lanyon Zinc Co. v. Brown (C. C. A.) 129 F. 912; Motion Picture Patents Co. v. Universal Film Mfg. Co. et al., 243 U. S. 502, 510, 515, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959.

It is clear, we think, that there is no infringement of claim 7 of the Petersen patent by the Birdseye process as employed by the defendants.

It is claimed, however, in the complainant's supplemental bill that claims 9, 15, 19, 20, and 21 of the Birdseye patent interfere with claim 7 of the Petersen patent.

The supplemental bill of the complainant is brought under section 4918, R. S., as amended by the Act of March 2, 1927, § 12 (44 Stat. 1337 [35 USCA § 66]), which section relates solely to interfering patents. To authorize proceedings under this statute, therefore, there must be an allegation of interfering claims upon the assumption that the appellant's patent is valid.

This statute was not intended to furnish a method of testing the validity of a patent unless interference is present, although there are authorities which hold that under this section the issue of patentability of the alleged invention may likewise be inquired into on the ground that if no patentable invention is involved, it would be a futile thing to determine the issue of interference and the complaint may be dismissed. Walker on Patents (6th Ed.) § 378; International Signal Co. v. Vreeland Apparatus Co., supra; General Chemical Co. v. Blackmore (C. C.) 156 F. 968; Nikola Tesla Co. v. Marconi Wireless Tel. Co. (D. C.) 227 F. 903.

Since we think none of the claims in the Birdseye patent, when construed in the light of the specifications and drawings in the application, interfere with claim 7 of the Petersen patent, it becomes immaterial whether the Petersen patent is valid or invalid for want of novelty so far as the disposition of the supplemental bill is concerned.

To warrant declaring a claim invalid for interference, substantial identity must be shown.

Of the claims of the Birdseye patent urged by the appellant as interfering with his claim 7, claim 9 involves a predetermined pressure on the food product while in the process of refrigeration, whether the food product has been previously tightly packed in a container or not, while claim 7 of the complainant's patent simply provides for "tightly packing" of the food product in a deep, elongated, narrow container and immersion in a cold brine.

Claim 15 of the Birdseye patent describes a process of refrigeration by first packing the food in a container so as to insure a minimum of air voids, and then pressing together the opposed surfaces of said container of the food product further to compact said product while "simultaneously freezing the product," as distinguished from the "tightly packing" of the comestible in a "deep, elongated, narrow container," and then immersing it in a cold brine, as required in claim 7 of the Pe-

464

tersen patent, but without specifying pressure on the sides of the container during refrigeration as an essential element of the process. When claim 15 is construed in the light of the drawings and specifications, we think it cannot be said to be substantially the same as the process described in Petersen's claim 7. The well-known physical fact, that a vessel immersed in water is subjected to pressure on each side by the weight of the water above, is not claimed by the appellant as an essential element in his invention.

Claim 19 of the Birdseye patent does not necessarily involve close or tight packing, but, like claim 9, involves the application of pressure upon a food product, whether closely packed or not, while it is passing through a refrigerating zone.

Neither does claim 20 of the Birdseye patent involve close packing in a container before passing the food product through the refrigerating zone. This claim involves first forming the food into a block or slab before being passed through the refrigerating zone. This claim, also, especially when interpreted in connection with the specifications and drawings, involves something more than tightly packing the food product in a deep, elongated, narrow container and immersing it in a cold brine.

Claim 21 of the Birdseye patent differs from claim 9 of that patent only in that the food, without being tightly packed in a container, is subjected to pressure as it is passed through the refrigerating medium. It does not require the food to be tightly packed in a container before being subjected to the refrigerant, as does claim 7 of the Petersen patent, and does not interfere with that claim.

We are of the opinion that none of the claims in the Birdseye patent, when interpreted in connection with the drawings and specifications, can be said to be clearly coextensive with claim 7 of the Petersen patent, and that both the complainant's original bill and his supplemental bill were properly dismissed.

It is conceded by the appellant that none of the other claims than those above considered of the Birdseye patent interfere with claim 7, and particularly claims 22, 23, 24, 25, and 26, which, when considered in connection with the drawings and specifications, fully cover all that the defendants claim under the Birdseye patent.

We do not find that the alleged errors in excluding or admitting evidence require consideration.

The decree of the District Court is affirmed, with costs in this court.

MORTON, *Circuit Judge.*

I concur. Claim 7 of the Petersen patent, when read in the light of the prior art and of common knowledge at the date of the alleged invention, seems to me obviously and completely lacking in invention. This being so, both bills based upon it must fail.