### DUGAN v. FORD INSTRUMENT CO.
### No. E–7550.

District Court, E. D. New York.

June 9, 1936.

Joseph Dugan, of Washington, D. C., in pro. per.

Victor D. Borst, of New York City, for defendant.

GALSTON, District Judge.

This is a suit in equity brought pursuant to section 4918 of the Revised Statutes (U.S. C., title 35, § 66 [35 U.S.C.A. § 66]).

Plaintiff is the inventor and patentee of letters patent No. 1,880,174, for an improvement in continuous aim gunfire control system, issued September 27, 1932, on an application filed May 25, 1932. Defendant is the patentee of letters patent No. 1,937,336, granted on the application of Hannibal C. Ford and Elliott P. Ross, for an improvement in fire control system, filed December 10, 1927. It is alleged that these are interfering patents; that the defendant's patent purports to be founded upon the mathematical concept disclosed in plaintiff's patent; that the claims of the defendant's patent read fully and squarely on the invention disclosed and claimed in the plaintiff's patent and that the disclosure in the defendant's patent is insufficient to enable any person skilled in the art to make and use the patented invention. Accordingly the plaintiff seeks a decree adjudging that he is the first and original inventor of the invention set forth in his letters patent; that the two patents are interfering patents and that the defendant's patent be declared invalid.

The answer alleges that no claims of the respective parties are in fact interfering claims and avers that no cause of action under section 4918 of the Revised Statutes exists.

Both inventions have in general the same object. The subject-matter is a fire control system adapted for use on unstable platforms such as the deck of battleships, to eliminate the effect of roll and pitch of the platform on the train and elevation settings of the gun mounted on such platform.

Dugan states the object of his invention is "to provide such guns with control mechansim for maintaining the guns continuously corrected in train and elevation for the 'trunnion tilt' error caused by rolling and pitching of the platform, regardless of the position or movements of the target in space relative to the gun."

Ford and Ross state a further object of their invention is "to provide in connection with and in part operable from the director an instrument for introducing the desired angular displacements of a gun from the line of sight of the director, commonly known as sight depression and sight deflection, and for calculating the ever changing train and elevation necessary to be applied to the gun in order that its aim may be preserved in spite of the angular motion of the craft."

At the outset of the trial plaintiff restricted his allegations of interference to claims 1 and 2 of each patent respectively, but the proofs and argument limit the issue to claims 1 of each patent.

U.S.C., Title 35, § 66 (35 U.S.C.A. § 66), provides: "Whenever there are interfering patents, any person interested in any one of them, or in the working of the invention claimed under either of them, may have relief against the interfering patentee, and all parties interested under him, by suit in equity against the owners of the interfering patent; and the court, on notice to adverse parties, and other due proceedings had according to the course of equity, may adjudge and declare either of the patents void in whole or in part, or inoperative, or invalid in any particular part of the United States, according to the interest of the parties in the patent or the invention patented. But no such judgment or adjudication shall affect the right of any person except the parties to the suit and those deriving title under them subsequent to the rendition of such judgment. (R.S. § 4918.)"

As a prerequisite to declaring claims of a patent void as interfering with claims of a prior patent, substantial identity between the claims must be found, as interpreted in the light of the text, specifications, drawings and prior art. International Signal Co. v. Vreeland Apparatus Co. (C.C.A.) 278 F. 468; Petersen v. General Seafoods Corporation (C.C.A.) 66 F.(2d) 459.

Dugan, in March, 1930, brought action in the United States Court of Claims against the United States government because of use by the government of a gun manufactured by the defendants herein, which he alleged infringed an earlier patent granted to him on October 29, 1929. The apparatus was known as "Mark XIX." Prior thereto an interference had been declared in the Patent Office on September 27, 1928, between the then copending application for the defendant's patent in suit and an earlier Dugan patent. The seventeen counts involved in the interference were dismissed on the ground that the counts were not patentable to Dugan, and count 17 was disclaimed by Dugan and priority awarded to Ford and Ross. In that interference proceeding Dugan became acquainted with the Ford and Ross invention.

Claim 1 of plaintiff's patent No. 1,880,-174, reads as follows: "An unstable platform, a sight, means for mounting said sight to pivot universally on said platform, a gun rotatable about train and elevation axes on said platform, means for simultaneously determining the pitch of the platform in the vertical plane of sight to the target and the roll of the platform in a plane perpendicular to said plane of sight and perpendicular to said platform at all angles of pitch, means for introducing displacements of the gun from the said vertical plane of sight and from a horizontal reference plane, and mechanism operable by both of said means for calculating and applying to the gun all of the necessary corrections in train and elevation to preserve its aim on the target throughout the roll and pitch of the platform."

Claim 1 of defendant's patent No. 1,937,-336, reads as follows: "In a fire control system for ordinance mounted on an unstable platform, the combination of a director, means for eliminating the effect on the line of sight of the director of angular movements of the platform in the vertical plane of the line of sight and in a vertical plane at right angles thereto, whereby the operation of following a target in

train and elevation may be performed as if the director were mounted upon a stable platform, means for introducing angular displacements of a gun from the line of sight, and means operable by both said means for calculating and applying to the gun the train and elevation necessary to preserve its aim in spite of the angular movements of the platform."

Dugan's position is that the claims are substantially the same in scope, and that they differ only in words. He finds an unstable platform positively included in his own patent and inferentially in the defendant's claim. The next element is a sight to pivot universally on the unstable platform. Defendant's claim, said Dugan, calls for a "director" instead of a sight, and the reference numeral "1" in Fig. 1 of the drawing, he contends, shows not only the sight, but also the support for the sight, that is, means for pivoting the sight universally.

The next element in the plaintiff's claim is "a gun rotatable about train and elevation axes on said platform." This element is not positively stated in defendant's claim, but follows inferentially, said Dugan, from the provision for "means for introducing angular displacements of a gun from the line of sight, and means operable by both said means for calculating and applying to the gun the train and elevation necessary to preserve its aim in sight of the angular movements of the platform."

The next element is "means for simultaneously determining the pitch of the platform in the vertical plane of sight to the target and the roll of the platform in a plane perpendicular to said plane of sight and perpendicular to said platform at all angles of pitch." The corresponding mechanism in the defendant's patent is claimed by Dugan to be "means for eliminating the affect on the line of sight of the director of angular movements of the platform in the vertical plane of the line of sight and in a vertical plane at right angles thereto."

Continuing with the comparison, Mr. Dugan referring to claim 1 of his patent which provides "means for introducing displacements of the gun from the said vertical plane of sight and from a horizontal reference plane," finds correspondence in defendant's "means for introducing angular displacements of a gun from the line of sight."

The last element in claim 1 of plaintiff's patent is the "mechanism operable by both of said means for calculating and applying to the gun all of the necessary corrections in train and elevation to preserve its aim on the target throughout the roll and pitch of the platform." The equivalent provision in the defendant's patent, according to Mr. Dugan, is "means operable by both said means for calculating and applying to the gun the train and elevation necessary to preserve its aim in spite of the angular movement of the platform."

It is to be remarked that the last element in claim 1 of the plaintiff's patent includes means for calculating and applying to the gun "all of the necessary corrections in train and elevation." Significance must be attached to the phrase employed because Mr. Dugan, in prosecuting his own application before the Patent Office, said:

"Claims 1 * * * clearly distinguish from all prior art by including the means for eliminating the affect on the sight of the roll of the platform about the pitch and roll axis; and they particularly distinguish from the pending application of Ford and Ross, serial No. 239,140* by specifying that all of the necessary corrections are applied to the gun to preserve its aim throughout the roll and pitch of the platform. As clearly appears from page 11 of the Ford and Ross application, the Ford and Ross apparatus only applies part of the corrections for roll and pitch to the gun and is incapable of applying all of each correction.

"In the proceedings in the Court of Claims, No. L–91, Dugan v. United States, the Ford Instrument Company, on behalf of the Defendant, filed two Exhibits (Defendants' Exhibits 34 and 35) which constitute a clear admission on the part of Ford and Ross and their assignee, the Ford Instrument Company, that the instrument shown in the Ford and Ross application does not and cannot apply all of the necessary corrections to the gun. For example, Defendants' Exhibit 34 shows errors in elevation correction ranging all the way from six to ninety minutes when the gun elevation relative to the horizontal is 40°. Defendants' Exhibit 35 shows errors in train correction of the Ford and Ross apparatus ranging up to 18'.

"It will be evident by comparison of the present application with the Ford and Ross application that the invention forming the subject matter of the present application solves four equations, indicated in Figures

---

*This is the application for defendant's patent in suit.

2 and 4 of the drawing in the present application, which can not be solved at all by anything disclosed in the aforesaid Ford and Ross application. In other words, the apparatus disclosed herein is a mathematically accurate instrument and the claims are not intended to cover anything which is capable only of determining part of the necessary correction in train and elevation to compensate for trunnion tilt error of the gun."

■ Now it is, of course, well established in this circuit that the arguments of solicitors are not competent to restrict a patentee except where the argument advanced is to overcome a cited reference. But in the pending matter an unusual situation existed. The passage quoted appears as part of a paper filed July 29, 1932, as a preliminary amendment and a continuation in part of Dugan's application for automatic fire control system, serial No. 383,402, filed August 3, 1929, and patented June 2, 1932. The argument is made not by a solicitor, but by the applicant himself. Mr. Dugan, it may be observed, is a most intelligent and able man—skilled as scientist, as well as·lawyer. He had had fourteen years' experience, from 1910 to 1924, as an Examiner in the Patent Office, rising from various grades to Assistant Chief of Division, and was in complete charge of all applications relating to geometric instruments. In the circumstances it seems to me that the prosecution of his own application in the Patent Office presents a situation somewhat different from that which has led our Circuit Court of Appeals to lay down the principle that the arguments of solicitors should be disregarded in construing a patent.

Mr. Dugan's explanation is that his apparent inconsistency is not actual. Though contending that there is identity in the two claims of the respective patents, he still maintains his claim 1 distinguishes from the Ford and Ross disclosure.

The Dugan claim describes a mathematically accurate instrument providing for all necessary corrections. This is not so in the Ford and Ross patent. Their specification shows that instead of using mathematically exact equations 15 and 29, the mechanism disclosed embodies working equations 30 and 31. The working equations would be mathematically accurate for only one combination of values of angles.

■ Certainly claim 1 of the Ford and Ross patent employs a language that does not of necessity compel an interpretation broad enough to include means for calculating and applying all of the necessary corrections. Moreover, the principle is well established that claims should be held valid if that can be effected by reasonable interpretation based on a reading of the specification. Canda v. Michigan Malleable Iron Co. (C.C.A.) 124 F. 486; Winget Kickernick Co. et al. v. Kennilworth Mfg. Co. (C.C.A.) 11 F.(2d) 1; Topliff v. Topliff, 145 U.S. 156, 171, 12 S.Ct. 825, 36 L.Ed. 658. In McClain v. Ortmayer, 141 U.S. 419, 424, 425, 12 S.Ct. 76, 78, 35 L.Ed. 800, it is said: "In a case of doubt, where the claim is fairly susceptible of two constructions, that one will be adopted which will preserve to the patentee his actual invention."

■ It is equally true that when it becomes necessary to construe a claim narrowly the courts will give such a narrow construction if that can be done consistently with the language of the claim and of the description. Van Ness v. Layne (C.C.A.) 213 F. 804; Fowler & Wolfe Mfg. Co. v. McCrum-Howell Co. (C.C.A.) 215 F. 905.

■ In his examination of Ross it appeared that Mr. Dugan was of opinion that the absence of the words "approximately" or "substantially" or "partly" from the claim was evidence that there was no indication to limit the device to one which was not mathematically accurate; but it is well settled that the phrase "substantially as described," which was frequently employed by solicitors in the drafting of patent specifications, need no longer be employed, for the phrase is always implied in claims wherein it is not expressed. Permutit Co. v. Wadham (C.C.A.) 13 F.(2d) 454, 458. In that case Judge Denison said: "But, where the specification clearly shows that the inventor contemplated the limitation, and where the language of the claim is not clear to the contrary, it may be so construed by reference to the specification that the patent may prevail (Lamb Knit Goods Co. v. Lamb Glove & Mitten Co. (C.C.A. 6) 120 F. 267, 269, 56 C.C.A. 547); and the fact that the claim does not say, 'substantially as described,' is not controlling (National Tube Co. v. Mark (C.C.A. 6) 216 F. 507, 515, 133 C.C.A. 13)."

■ The difference between the claims is not merely verbal. Dugan insists that the Ford and Ross apparatus is incapable of applying all the corrections. Some indication of this is apparently admitted in the specification itself wherein it is stated in reference to equations 30 and 31 (the practical work-

ing equations) : "It will be understood that the errors introduced by approximations in the foregoing derivation are negligible as far as the practical application of the equations to the system is concerned."

This difference cannot be ignored, particularly in the light of Dugan's contention before the Patent Office that because his corrector was mathematically accurate, by the insertion of the term "all" in his claims, as applying to corrections, he distinguished from the Ford and Ross disclosure.

Mr. Dugan in cross-examination testified:

"XQ124 Mr. Dugan, when you filed your application for your patent here in suit, you, of course, knew of the pendency of the Ford-Ross application for defendant's patent in suit, did you not? A. Quite familiar with it.

"XQ125 Did you distinguish, in the prosecution of your claims for your patent here in suit, from the Ford and Ross disclosure, or did you intend so to do? A. I intended to do so and I drafted the claims perfectly to avoid any operable mechanism that might not possibly be shown in the Ford and Ross application.

"That application is prior art to my later patent, providing it does disclose what it claims. That is an admission on the record.

"The Court: Well, then, you get down to this position, Mr. Dugan, don't you, that if your contention as to insufficiency of the disclosure in defendant's patent fails, if that argument fails, then your suit must fail?

"Mr. Dugan: That is right, your Honor."

Mr. Dugan in effect contends that claim 1 of the Ford and Ross patent covers something not disclosed by the inventors.

Dugan urges that his claim 1 defined a mathematically accurate instrument and by that he meant a corrector under the control of the level and cross-level corrector mechanism. The clause in the Ford and Ross patent reading "a means operable by both said means for calculating and applying to the gun the train and elevation necessary to preserve its aim in spite of the angular movements of the platform," does not call necessarily for a mathematically accurate instrument. It is significant that the instrument made pursuant to the instruction or disclosure of the Ford and Ross patent is not a mathematically accurate instrument, as is evident from the plot of errors shown in the graph in evidence.

A second difference in the claims is found in the provision in the Dugan patent for means for introducing displacements of the gun from the vertical plane of sight and from a horizontal reference plane, as contrasted with means for introducing angular displacements of a gun from the line of sight as defined in the Ford and Ross patent.

In Dugan's action filed September 1, 1932, he said: "Claim 1 has been amended to make it more definite and to bring out the fact that applicant's apparatus simultaneously determines the pitch of the platform in the vertical plane of sight to the target and the roll of the platform in a plane perpendicular to said vertical plane of sight and perpendicular to said platform at all angles of pitch. This property inherent in applicant's apparatus is what distinguishes it from applicant's own patent and from all the prior art inasmuch as the roll is measured always in a plane perpendicular to the deck instead of always in a vertical plane as in the Hewlett and Willard, and in the Ellis and Green patented devices."

The Ford and Ross mechanism sets into the computer the exact angle of the line of sight both in elevation and in azimuth, whereas the Dugan patent provides no means for determining the elevation angle of the line of sight. Dugan uses the expression "vertical plane of sight" as referring to the vertical plane passing through the target and the point of intersection of the train and elevation axes of the gun. Apparently the setting of his ideal gun has nothing to do with the actual angle of the line of sight itself. He says too in his specification:

"Regardless of the position of the angle Dg either above or below the horizontal plane, it is necessary that its projection on the horizontal plane be determined so that it can be set in properly in the deflection part of the apparatus. For targets lying in the same horizontal plane as the gun, it is obvious that the deflection angle D may be determined in the usual manner.

"It will be apparent from the foregoing discussion, that the system is intended to correct continuously the errors due to the roll and pitch of the deck, and to provide a means for setting the gun in train and elevation as if the director and gun were mounted on a stable horizontal deck or platform. It will also be evident that the system is designed to divorce the problem of trunnion tilt correction from the line of sight; and to consider this problem with reference to vertical and horizontal planes,

regardless of the elevation or depression of the sight."

D in the Dugan patent is the angle of lateral deflection of the vertical plane containing the bore axis of the gun and set-off in a horizontal plane relative to the vertical plane of sight to the target. It is not at all clear how this deflection set in a horizontal plane can be converted to a lateral deflection in an inclined plane of the line of sight, as is shown in the Ford and Ross patent. It must be concluded that Dugan's means for introducing displacements of the gun from the vertical plane of sight and from a horizontal reference plane are not the Ford and Ross means for introducing angular displacements of a gun from the line of sight.

Thus there are then real differences in the two claims, and consequently the suit must fail.

With this view of the case, it becomes unnecessary to discuss the matter of the sufficiency of the disclosure of the Ford and Ross patent. However, it would seem pertinent to observe that "Mark XIX," the instrument manufactured by the defendant for the United States government, according to the testimony of Ross, follows the instruction of the defendant's patent.

The complaint will be dismissed because of failure to prove identity of claims. If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.