## ENRIQUEZ v. UNITED STATES.

### No. 12553.

United States Court of Appeals
Ninth Circuit.

March 30, 1951.

Paul H. Primock, Shute & Elsing and W. T. Elsing, Phoenix, Ariz., for appellant.

Frank E. Flynn, U. S. Atty., E. R. Thurman, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before HEALY, BONE, and POPE, Circuit Judges.

HEALY, Circuit Judge.

Appellant Enriquez and five others, Arturo C. Leyvas, Ray C. Leyvas, Connie Duarte, Arturo E. Jerez and Joe Martinez, were charged with violations of 21 U.S.C.A. § 174 and 26 U.S.C.A. § 2554(a) (importation, concealment, transportation and sale of narcotic drugs), and with conspiracy to commit the offenses. The indictment contained 78 counts of which 77 charged substantive violations. The 78th charged the conspiracy. All the defendants except Enriquez entered pleas of guilty to various of the substantive offenses and to conspiracy, and the trial proceeded as against Enriquez alone. At the close of the government's case the court directed a judgment of acquittal as regards the substantive counts, nine in number, which involved Enriquez, but permitted the case to go to the jury on the conspiracy count with the result that Enriquez was convicted of that offense.

Three points are argued on the appeal (1) insufficiency of the evidence to sustain the verdict, (2) admission over objection of certain items of evidence claimed to be heresay, and (3) claimed error in the admission of a judgment of conviction for a prior violation of the narcotics laws.

1. In the course of the trial the government produced evidence of numerous sales of narcotics by the members of the group who pleaded guilty and established in a thorough-going fashion the existence of a criminal concert of action among them. The evidence tending to incriminate Enriquez with the others need be gone into but briefly. The scene of the operations was the City of Phoenix, Arizona, and the activities of the group centered around an establishment called Pirata's Club, which all, including Enriquez, frequented. Enriquez was the owner of the place. In the record he is generally referred to by the nickname "Pirata". All six of the persons charged are Mexicans.

The investigation carried on by the narcotics agents covered a period of a year or better commencing with the early part of 1948. It is contended that the testimony of the agents and the undercover men whom they employed spells no more than friendly acquaintance and innocent association between Enriquez on the one hand and the conspirators on the other. But we are of opinion that the record affords reason for believing that Enriquez was more than a mere onlooker. Numerous incidents shown point cumulatively in the direction of his active connection with this underworld traffic in drugs, perhaps even to his being the chief figure in it. We mention but a few of them. Enriquez' car, a green Cadillac sedan, was proved to have been used several times in making deliveries of narcotics, particularly a certain rather large delivery of opium. On one occasion federal agent Johnson spoke to Enriquez concerning some customers who desired opium at once. Johnson said he had not been able to get hold of Arturo Leyvas [one of the conspirators] with whom he had been dealing. Enriquez replied that there was nothing in town, "and you will not be able to get anything until Art [Leyvas] gets back." There was nothing, Enriquez said, "that I can do until the stuff gets here." After further conversation Enriquez said, "I know that Art is going to be back tomorrow night. If you will be here [in Pirata's Club] between 5:00 and 5:30, I will see to it that Art meets you right here." At the time and place appointed agent Johnson was waiting. After an interval Arturo Leyvas appeared and said "Arnold [Enriquez] told me to contact you." The contact resulted at that time in the delivery by Leyvas to the agent of a quantity of opium for which the agent paid Leyvas $1,000.

2. Three incidents in this general pattern of behavior afford evidence claimed by the government to show guilt and at the same time furnish the basis of appellant's claim that the court erred in admitting hearsay testimony. Agent Smith was permitted to testify that on January 15, 1949, he was present in a corner drugstore in Phoenix and watched one Cobos dial a certain telephone number. Cobos was an undercover man working with Smith. The number he was seen to dial was identified as Enriquez' residence telephone. Upon completion of the call Smith searched Cobos, furnished him with $50, and followed him to Cobos' home. Shortly Martinez, one of the conspiratorial group, drove up in a car, Cobos came out of his house, and after a little conversation Martinez handed Cobos a package and Cobos paid Martinez what appeared to be money. Cobos then turned the parcel over to agent Smith and it proved to contain a jar of opium. Three weeks later agent Smith was again present and watched Cobos dial Enriquez' telephone number. A conversation in Spanish ensued over the telephone, in the course of which Cobos spoke the name "Pirata." The same routine of search and furnishing of money was gone through with. The agent says he followed Cobos to his house, saw Martinez drive up in a car, and apparently deliver something to Cobos. After Martinez drove away Cobos turned over to Smith a jar of smoking opium. Smith then drove rapidly to the home of Enriquez, saw Martinez parking his car there and saw him enter the front door of Enriquez' home. Two days later Smith again watched Cobos dial the same telephone number, heard him talk to someone in Spanish, and saw him hang up the receiver. Cobos was then seen to dial another telephone number[1] and heard to say in English, "Let me speak to Pirata." The conversation which followed was in Spanish, and in the course of it the name Pirata was spoken several times by Cobos. The usual routine was then repeated. Cobos was followed to his house, Enriquez and Arturo Leyvas drove up in a car, Cobos came out of his house and got in the car with the two men and talked with them for some minutes. Enriquez and Arturo Leyvas then drove away. Smith followed them to Martinez' house and saw them park the car there. Shortly afterwards Martinez came in the car they had been using and was seen to deliver to Cobos a parcel containing a jar of opium.

■ Cobos was not present at the trial, his whereabouts apparently being unknown. Appellant complains only of the court's refusal to strike Smith's statement that Cobos mentioned Pirata and spoke his name several times in the two later of the three telephone conversations. The argument is that there was no evidence, direct or circumstantial, that Cobos was speaking to appellant, hence Smith's testimony on the point was pure hearsay. We are unable to agree. The circumstances shown tended quite substantially to prove that Cobos actually spoke to Enriquez in both instances. The ruling on this evidence was not error.

3. Near the close of the government's case the United States attorney offered and the court admitted, over objection, a record of appellant's prior conviction of violating the narcotics statutes involved here. This judgment had been entered in the same court on March 5, 1945. According to its recitals appellant was sentenced to confinement for a term of two years and six months. In ruling on appellant's objection, in the absence of the jury, the trial judge stated that he believed the judgment admissible on the question of intent, and remarked that its effect would be limited by proper instructions. The instruction ultimately given is shown on the margin.[2]

---

1. The second number dialed was shown to be that of Connie Duarte, one of the admittedly conspiratorial group.

2. "Now, evidence of a former conviction of the defendant for a similar offense was introduced in evidence. This was for a very limited purpose. However, I will read you an instruction in connection with that.

"The fact that the accused may have committed an offense at some time is not evidence that at a later time the accused committed the offense charged in the indictment, even though both offenses be of a like nature. Evidence as to

■ The effort to capitalize on the alleged error in admitting this record is beset with serious procedural difficulties. At a later stage of the trial appellant took the witness stand and testified generally and at length in his own defense. This being so, his prior conviction might have been proved in due course either by cross examination or by production of the record, so that the fact and nature of the conviction would presumably have been gotten before the jury in any event. In this view, impropriety in the introduction of the judgment would appear at most one of timing. True, the purpose there would be merely to impeach the accused as a witness, whereas the court's instruction permitted the jury to consider his conviction for its bearing on his intent. But the record fails to disclose that any objection was made to the instruction, or that there was any request for an alternative charge restricting the evidence to the matter of credibility. In short there was an entire failure on appellant's part to observe the requirements of Rule 30 of the Criminal Rules.[3] We may say that Rule 30 is not designed as a mere trap for the unwary. Painstaking compliance with its requirements, although not an easy matter for the lawyer, is of the very essence of the orderly administration of criminal justice.

■ But these considerations aside, we think it was not error to admit the judgment for the limited purpose outlined in the instruction. The earlier crime was of a nature substantially identical with the present and was committed in the same general locality. The time of its commission was not excessively remote.[4] The main defense on the merits was that while Enriquez was shown to be aware of the criminal activities of his associates he was not shown to have participated in them; and that his informing the federal agents where or from whom narcotics might be procured was a mere helpful gesture, not different from that of a reputable person who in prohibition days might tell an inquirer where a reliable bootlegger could be located. As a mere matter of common sense it would seem that evidence of the prior conviction had a distinct probative value in that it tended to negative innocence of motive or intent. See Wigmore on Evidence, 3d Ed., Vol. II, §§ 302, 303. Compare discussion in Smith v. United States, 9 Cir., 173 F.2d 181, 185.

Affirmed.

an alleged earlier offense of a like nature may not therefore be considered in determining whether the accused did the acts charged in the indictment. Nor may such evidence be considered for any other purpose, unless the jury first finds that the other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused did the acts charged in the indictment.

"If the jury should find from the other evidence in the case that the accused did the acts charged in the indictment, then the jury may consider evidence as to an alleged earlier offense in determining the state of mind or intent with which the accused did the acts charged in the indictment. And, where all the elements of an alleged earlier offense of a like nature are established by evidence which is clear and conclusive, the jury may draw therefrom the inference that in doing the acts charged in the indictment, the accused acted wilfully, and not because of mistake or inadvertence or other innocent reason."

3. The rule in its entirety reads: "Instructions. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury." Fed.Rules Cr.Proc. Rule 30, 18 U.S.C.A.

4. Presumably appellant served the major portion of his sentence which was 2½ years. His release from prison must have been measurably close to the time covered by the later activities.