**APODACA v. UNITED STATES.**

**SANDMAN v. UNITED STATES.**

**BEASLEY v. UNITED STATES.**

Nos. 4198, 4199, 4200.

United States Court of Appeals
Tenth Circuit.
April 23, 1951.

Rehearing Denied May 21, 1951.

934

Harry L. Bigbee, Santa Fe, N. M., for appellant, Apodaca.

A. T. Hannett, Albuquerque, N. M. (G. W. Hannett and W. S. Lindamood, Albuquerque, N. M., on the brief), for appellant, Sandman.

H. A. Kiker, Santa Fe, N. M. (Charles C. Spann, Albuquerque, N. M., on the brief), for appellant, Beasley.

Maurice Sanchez, Asst. U. S. Atty., Albuquerque, N. M., and Albert H. Clancy, Asst. U. S. Atty., Santa Fe, N. M. (Everett M. Grantham, U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

An indictment containing two counts was returned in the United States Court for New Mexico against Alfonso Luchini Apodaca, Jr., Roy L. Sandman, Hubert W. Beasley, and I. E. Salazar. The first count charged that Apodaca was sheriff of Dona Ana County, New Mexico, Sandman was deputy sheriff of such County, Beasley was Chief of the New Mexico State Police, and Salazar was police officer of such State; and that acting under the laws of the State creating their respective offices and positions and prescribing the duties thereof, they conspired to commit an offense against the United States, namely to violate the provisions of Title 18, section 242, of the United States Code. And it further charged that the substance of the conspiracy was that the accused would, while acting under color of the laws, statutes, ordinances, regulations, and customs of such State and County, subject and cause to be subjected Wesley Eugene Byrd, an inhabitant of New Mexico, to the deprivation of rights, privileges, and immunities guaranteed to him and protected by the Fourteenth Amendment of the Constitution of the United States, to-wit, the right and privilege to be secure in his person while in the custody of the State, the right and privilege while in such custody not to be subjected to punishment without due process of law, the right and privilege to be immune while in the custody of persons acting under color of the laws of the State from illegal assault, battery, and torture by any person exercising the authority of the State, and the right and privilege to be tried by due process of law and if found guilty to be sentenced and punished in accordance with the laws of the State, that is to say, that the accused, while acting in their official capacities, would cause Byrd to be arrested and placed in the jail of Dona Ana County, and while he was in their custody they would unlawfully and wilfully beat and assault him, and would unlawfully and forcibly torture him by applying, clamping, and squeezing a bicycle type lock and another type lock around his testicles, inflicting upon him serious pain and bodily harm and injury, for the purpose of forcing him to confess that he had committed a criminal offense. And it fur-

ther charged that in furtherance of the conspiracy, the accused committed five specified overt acts.

The second count repeated the charge contained in the first count respecting the official positions of the accused. And it charged that the accused, acting under the laws of the State creating their respective offices and positions and prescribing the duties thereof, did wilfully, under color of the laws, statutes, ordinances, regulations, and customs of the State and County, subject and cause to be subjected Wesley Eugene Byrd, an inhabitant of the State, to the deprivation of rights, privileges, and immunities secured to him and protected by the Fourteenth Amendment, namely the right and privilege and to be secure in his person while in the custody of the State, the right and privilege while in such custody not to be subjected to punishment without due process of law, the right and privilege to be immune, while in custody of persons acting under color of the laws of the State, from illegal assault, battery, and torture by any person exercising the authority of the State and County, the right and privilege to be tried by due process of law and if found guilty to be sentenced and punished in accordance with the laws of the State, in that while Byrd was in their custody the accused did wilfully, unlawfully, and forcibly torture him by applying, clamping, and squeezing a bicycle type lock and another type lock around his testicles, inflicting upon him serious pain and bodily harm and injury, for the purpose of forcing him to confess that he had committed a criminal offense.

Apodaca was found guilty on both counts and sentenced on each count to imprisonment for a term of one year, with provision that the sentences should run concurrently. Sandman was found guilty on the first count, acquitted on the second, and sentenced to imprisonment for a term of one year. Beasley was acquitted on the first count, found guilty on the second, and sentenced to imprisonment for a term of one year. And Salazar was acquitted on both counts. Apodaca, Sandman, and Beasley appealed.

Appellant Apodaca attacks both counts in the indictment; appellant Sandman assails the first count; and appellant Beasley challenges the second count. Approached from different positions, the argument in effect is that each count failed to charge a criminal offense under the laws of the United States. The pertinent part of section 1 of the Fourteenth Amendment to the Constitution of the United States provides "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." And section 5 expressly empowers Congress to enforce by appropriate legislation the provisions of the article. Section 242, Title 18 United States Code, provides in presently pertinent part that whoever, under color of any law, statute, ordinance, regulation, or custom wilfully subjects any inhabitant of any State to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States shall be punished as therein specified. And section 371 of the title provides among other things that if two or more persons conspire to commit an offense against the United States, and any one or more of such persons do any act to effectuate the object of the conspiracy, each shall be punished as therein specified. The right to the enjoyment of life, liberty, and property does not find its source in section 1 of the Fourteenth Amendment. That constitutional provision was not designed to create or vest rights of that nature. It was intended to safeguard and protect the individual against the deprivation of such rights under color of State authority, without due process and equal protection. But section 242 does not undertake merely to protect rights and privileges derived from the Constitution of the United States. It makes criminal the wilful deprivation under color of State authority of any right, privilege, or immunity secured or protected by the Constitution. It brings within its

sweep the wilful deprivation under color of State authority of any right, privilege, or immunity which is guaranteed by the Constitution. It does not include wrongful acts of officers of the state or county solely in their personal pursuits. But it does bring within its ambit any wilful deprivation under color of State authority of any right, privilege, or immunity which is guaranteed by the Constitution of the United States. And the assault and torture of a person by state and county officials, not in their personal pursuits but under color of official authority solely for the purpose of compelling such person to confess the commission of a crime, constitute deprivation of rights, privileges, and immunities guaranteed by the Constitution. Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495.

■ The first count in the indictment in this case did not merely charge that the accused conspired to assault and torture Byrd. And the second court did not merely charge that they assaulted and tortured him. Each went further. The first count charged in language too clear for misunderstanding the formation of a conspiracy to deprive Byrd, under color or pretext of State authority, of rights, privileges and immunities guaranteed to him by the Fourteenth Amendment by assaulting and torturing him in the manner set forth for the purpose of forcing him to confess the commission of a criminal offense. And the second count charged in equally clear language the substantive offense of depriving Byrd, under color or pretext of State authority, of such rights, privileges, and immunities by assaulting and torturing him for such purpose. Each count in the indictment followed the statute in its generalities; each charged an offense under the laws of the United States; and neither is open to the attack directed against it. Screws v. United States, supra; Williams v. United States, 5 Cir., 179 F.2d 656.

■ The sufficiency of the evidence is challenged. It was stipulated at the outset of the trial that the defendants occupied the official positions as charged in the indictment. While the evidence presented sharp conflicts, direct and circumstantial evidence was adduced which tended to establish these facts. A girl residing in Las Cruces, county seat of Dona Ana County, had been murdered and her body had been found at a point several miles from the city. Byrd—a Negro—had resided in Las Cruces for approximately seven months. A deputy sheriff told Byrd that the sheriff desired to talk with him. Without any warrant or other process, the deputy took Byrd to the office of the sheriff. Immediately upon arriving there, Apodaca showed him a pair of shoes, asked him if he recognized them, told him that he knew he killed the girl, interrogated him about the murder, cursed him, struck him with a strap, and directed that he be placed in jail. He was placed in a dark cell with something like cork around it, and he was kept in jail about two weeks. On the next day after Byrd was placed in jail, a complaint was filed in the Justice of the Peace Court charging him with the offense of operating as a dealer in automobiles without a license, but he was not told anything about the charge until shortly before his discharge from jail; and then after bail was furnished to appear before the District Court, the charge was not pressed. It was dropped. While in jail, Byrd was interrogated several times about the murder of the girl, on one occasion he was handcuffed to the arm of a chair, and on two occasions he was slapped or struck. After being in jail nine or ten days, after being interrogated several times, after being handcuffed to the arm of a chair, after being struck once with a strap, after being slapped or struck on two other occasions, Byrd was handcuffed, placed in an automobile, and taken to the point at which the body of the girl had been found. There, a small type of lock was placed around one of his testicles and clamped, and the testicle was squeezed. Later the small lock was removed, a larger lock was placed around both of his testicles, the small lock was again placed around one testicle, both locks were clamped, and both testicles were squeezed. While the locks were clamped on his person and prior thereto, Byrd was urged to admit the commission of the homicide. It was more than two hours from the

time the small lock was first placed around one testicle until both locks were removed from the person of Byrd. Byrd was subjected to serious pain and bodily injury, all, for the purpose of coercing him to confess that he murdered the girl. All of the appellants participated in some manner and at some juncture in such acts and conduct, and appellants Apodaca and Beasley took part in the placing of the locks upon the person of Byrd. It is clear that the evidence together with the inferences fairly to be drawn from it was sufficient to support the verdict of the jury finding appellants Apodaca and Sandman guilty of the charge of conspiracy contained in the first count of the indictment, and also finding appellants Apodaca and Beasley guilty of the substantive offense laid in the second count.

 It is urged that the court erred in its instructions to the jury in including in its enumeration of the rights, privileges, and immunities guaranteed to Byrd by the Fourteenth Amendment the right, privilege, and immunity not to be denied the equal protection of the laws of the State of New Mexico. It is further urged that the court erred in its instructions in assuming that the defendants made an assault upon Byrd. No exception was taken to these portions of the instructions. Rule of Criminal Procedure 30, 18 U.S.C. provides among other things that no party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection; and Rule 52(b) provides that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. The two rules are to be construed together. Construing them in that manner, it is recognized law that ordinarily errors in the charge of the court are not open to review on appeal unless the matter was brought to the attention of the trial court by exception as required by Rule 30, but that notice may be taken of a grave error which amounts to the denial of a fundamental right of the accused even though no exception was taken. Ryles v. United States, 10 Cir., 172 F.2d 72; judgment vacated apparently on other ground, 336 U.S. 949, 69 S.Ct. 882, 93 L.Ed. 1104. No grave error amounting to the denial of a fundamental right is presented here, and therefore the question is not open to review.

 The next contention is that the court erred in its instructions with respect to the meaning of the terms "intent" and "wilful," required under section 242, supra, as applied to the Fourteenth Amendment. The court instructed the jury among other things that the intent of the defendants was an essential ingredient of the crime of conspiracy laid in the first count of the indictment; that it was also an essential element of the substantive offense charged in the second count; that it applied to both counts; that a person is presumed to intend that which he voluntarily and wilfully does and must be presumed to intend all the natural, probable, and usual consequences of his act and conduct; that intent is merely the purpose or willingness to commit the act charged; that it does not require knowledge that such act is a violation of law; that it was not sufficient that the defendants may have had a general bad purpose; that it was necessary that they have the actual purpose of depriving Byrd of the constitutional rights enumerated in the indictment, but the fact that they may not have been thinking in terms of the Constitution was not material if their aim was to act under color of law and by virtue of their official authority to deprive Byrd of a right or privilege secured and protected by the Fourteenth Amendment; that the word wilfully was used in both counts and should be applied to both counts; that such word appearing in the statute and in both counts of the indictment has a very definite and distinct meaning which the jury must carefully consider; that in law, use of the words wilful and wilfully implies a conscious purpose to do wrong; that doing a thing knowingly and wilfully implies not only knowledge of the thing done, but a determination to do it with bad intent or with an evil purpose or motive; that it was not sufficient that the defendants had generally a bad purpose in doing the things

they did; that in order to convict them, it was necessary for the jury to find that they had in mind the specific purpose to deprive Byrd of rights, privileges, and immunities secured to him and protected by the constitutional provision; that in determining whether the requisite of wilful intent was present, the jury were entitled to consider all the attendant circumstances, the malice, if any, of the defendants toward Byrd, the weapons used in their assault, if any were used, the character and duration of the provocation of the assault and the time and manner in which it was carried out; and that all of such facts and circumstances might be taken into consideration for the purpose of determining whether the acts of the defendants were wilful and for the deliberate and wilful purpose of depriving Byrd of the constitutional rights enumerated in the indictment and in the instructions. And the court further instructed the jury that under the charge of conspiracy, the gravamen of the crime was the formation of the agreement to deprive Byrd of his rights guaranteed by the Constitution; and that in order to find the defendants guilty of the crime of conspiracy, the jury must believe that the defendants agreed to wilfully violate by the use of force and violence on the person of Byrd his rights guaranteed to him by the Constitution and laws of the United States. It was held in Screws v. United States, supra, that intent and wilfulness are essential elements of the offense delineated in section 242. And a critical examination of the portions of the instructions presently under consideration makes it crystal clear that in giving them the court followed without deviation or departure the path blueprinted in that case. It is inconceivable that the jury could have failed to understand correctly the meaning of the terms or that they were essential ingredients of the offense charged in each count of the indictment.

█ The instructions as a whole are drawn in question on the broad and general ground that they were lengthy, complicated, inconsistent one with another, contradictory one with another, and confusing.

No exception was taken to the instructions on these grounds. But where an error in the charge is so fundamental as not to submit to the jury all of the essential ingredients of the offense or offenses laid in the indictment, notice may be taken of it even though it was not brought to the attention of the trial court by appropriate exception timely taken. Screws v. United States, supra. Viewing the contention as an effort to present error of that kind, we consider it. The instructions were quite complete and comprehensive in scope. They cover twenty-five pages in the printed record. Obviously, an attempt to restate, or analyze, or discuss them in their totality is not advisable. We have examined them with painstaking scrutiny, and we are unable to share the view that they are subject to the criticism directed against them. They were not inconsistent, contradictory, or confusing. They were clear and consistent throughout, and they submitted to the jury with fullness, fairness, and accuracy in substance every element or issue in the case.

█ Error is assigned upon the giving of a supplemental instruction to the jury. After the jury had deliberated for several hours they sent word to the court that they desired additional instructions. When brought into court, the foreman advised the court that the jury had found it very hard to reach a unanimous decision; that such a decision seemed improbable; and that instructions were desired as to what procedure the jury should take. In response, the court stated that the case should be decided if it was possible for the jury to decide it conscientiously under their oaths; that they should resume their deliberations; and that if they were unable to reach a verdict before 7:30 o'clock in the evening, the court would give them an additional instruction. Having failed to reach a verdict after further deliberation, the jury were again brought into court and an additional instruction given. The substance of the instruction was that although the verdict to which a juror agrees must, of course, be his own verdict, the result of his own convictions, not a mere acquiescence in the con-

clusion of his fellows, yet in order to bring twelve minds to a unanimous result, the jury must consider the questions submitted to them with candor and with a proper regard and deference to the opinions of each other; that they should consider that the case must at some time be decided; that they were selected in the same manner and from the same source from which any future jury must be selected; that there was no reason to suppose that the case would ever be submitted to twelve men more intelligent, more impartial, or more competent to decide it, or that more and clearer evidence would be produced on one side or the other; that with such view in mind, it was the duty of the jury to decide the case if they could conscientiously do so; that in conferring together, they should pay proper respect to each other's opinions and listen with a disposition to be convinced to each other's arguments; that if the larger number of the panel were for conviction, a dissenting juror should consider whether a doubt in his mind was a reasonable one, which made no impression on the minds of so many men, equally honest, equally intelligent with himself, and who had heard the same evidence with the same attention and with an equal desire to arrive at the truth, and under the sanction of the same oath; and that on the other hand, if a majority were for the defendants, the minority should seriously ask themselves whether they should not reasonably doubt the correctness of a judgment which was not concurred in by most of those with whom they were associated, and distrust the weight and sufficiency of that evidence which failed to carry conviction to the minds of their fellows. It is argued that an instruction of this kind is coercive unless properly safeguarded by again calling to the attention of the jury the presumption of innocence, the burden of proof, the requirement that guilt be established beyond a reasonable doubt, and the duty of each juror not to surrender his conscientious convictions. In Allis v. United States, 155 U.S. 117, 15 S. Ct. 36, 39 L.Ed. 91, an instruction couched in substantially the same if not the identical language as that involved here was ex-

pressly approved. But this court has criticised such an instruction unless it does again call the attention of the jury to the presumption of innocence, the burden of proof, the requirement that guilt be established beyond a reasonable doubt, and the duty of each juror not to surrender his conscientious convictions, Berger v. United States, 10 Cir., 62 F.2d 438; or unless it expressly advises the jury that they are to be guided by all of the instructions previously given and the supplemental instruction, considered together, Speak v. United States, 10 Cir., 161 F.2d 562. The general instructions of the court covered in full measure the presumption of innocence, the burden of proof, the requirement that guilt be established beyond a reasonable doubt, and the duty of each juror to follow his conscientious convictions. Before the jury were called and the supplemental instruction given, the court advised the attorneys for the appellants of its intention to give the instruction and the nature of it. Upon being so advised and before the jury came into court, the attorneys requested permission to address the jury with respect to the law covered by the instruction. The request was denied and an exception taken. But no exception whatever was taken to the instruction. The failure of the instruction again to call the attention of the jury to presumption of innocence, the burden of proof, the requirement that guilt be established beyond a reasonable doubt, and the duty of each juror not to surrender his conscientious convictions, and its failure expressly to charge the jury that they were to be guided by all of the instructions—those previously given and the supplemental instruction, did not constitute a grave error which amounted to the denial of a fundamental right of the defendants. And no exception having been taken to such instruction the question is not open to review. Ryles v. United States, supra.

Appellant Apodaca presents the contention that the verdict in its several parts was inconsistent and contradictory, and that as to him it was the result of prejudice, passion, and bias. It is argued that finding Salazar not guilty on both counts,

finding Sandman guilty on the first count but not guilty on the second, finding Beasley not guilty on the first count but guilty on the second, and finding Apodaca guilty on both counts constituted objectional inconsistency and contradiction. But consistency in a verdict is not an invariable exaction of law. Where an indictment contains two or more counts, consistency in the verdict on the several counts is not necessary. An acquittal on one or more counts does not invalidate a finding of guilt on others, even though the same evidence was offered in support of all. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356; Garrison v. Hunter, 10 Cir., 149 F.2d 844. And other than a case where all conspirators except one are acquitted, the conviction of one or more defendants and the acquittal of others on the single count in an indictment or on each of several counts is not an inherent inconsistency which renders the verdict invalid as to those found guilty even though substantially the same evidence is adduced in respect to all of the parties. In other words, except where all conspirators save one are acquitted failure to convict all those charged is not an inconsistency or contradiction of which advantage can be taken, even though the evidence offered against all was substantially the same. United States v. General Motors Corp., 7 Cir., 121 F.2d 376, 411; American Medical Association v. United States, 76 U.S.App.D.C. 70, 130 F.2d 233, 252; United States v. Hare, 7 Cir., 153 F.2d 816. This verdict did not contain an inherent inconsistency or contradiction of which appellant Apodaca can be heard to take advantage. And there is no basis in the record for the argument that as to him the verdict was the result of prejudice or passion.

■ Complaint is made upon the denial of the motions for new trial. A motion for new trial is addressed to the sound judicial discretion of the trial court, and its action thereon will not be reviewed on appeal except in case of clear abuse of such discretion. Evans v. United States, 10 Cir., 122 F.2d 461; Rose v. United States, 10 Cir., 128 F.2d 622; Thayer v. United States, 10 Cir., 168 F.2d 247. The denial of these motions did not constitute an abuse of discretion.

The remaining contentions presented are without merit and do not call for discussion.

The judgments are severally affirmed.