## UNITED STATES v. CUMBERLAND.
### No. 10738.

United States Court of Appeals
Third Circuit.

Argued Dec. 2, 1952.

Decided Dec. 23, 1952.

Raymond Pace Alexander, Philadelphia, Pa., for appellant.

Alfred L. Luongo, Asst. U. S. Atty., Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

On this appeal a conviction of crime, although amply supported by evidence, must be set aside and a new trial directed because we think the cumulative effect of several errors in the charge of the district judge may well have been to prejudice and confuse the jury.

Appellant was convicted of selling marihuana cigarettes to one Hutchins, an informer. Hutchins testified unequivocally that on two occasions he purchased marihuana cigarettes from the appellant at her home. There was other testimony which tended to corroborate Hutchins' story. The

appellant took the stand and denied that she had sold Hutchins marihuana. She sought to create the impression that Hutchins had lied pursuant to a plot engineered by her estranged husband. Appellant operates a business, a beauty parlor, and the record indicates that she is widely known in the neighborhood where she lives and has her establishment. A number of persons testified that appellant enjoyed a very good reputation in the community. Except for the evidence of the crime here charged, there was nothing to suggest that this reputation was not merited.

The defense relied heavily upon character testimony in its effort to make the jury believe that the accused rather that Hutchins was telling the truth. Concerning this type of evidence, the court charged:

"Now, members of the jury, there has been character evidence offered here. You will weigh that character evidence along with all of the other substantive evidence in the case. Character evidence of its own weight could work an acquittal. If, after hearing all of the evidence, you still have a doubt in your mind, and it is a reasonable doubt, character witnesses then coming into play could work an acquittal, but again, members of the jury, character is what we are as distinguished from reputation, which is what people know us to be. There are many who walk around prating heavenly praises, but all the while having the heart of the devil himself. So that sometimes we enjoy a reputation until we are found out."

At the end of the charge the court in the presence of the jury agreed to the correctness of an amplifying and corrective statement made by defense counsel to the effect that character evidence is relevant at all stages of their deliberations and may cast such light upon the case as to persuade the jury that the accused should be acquitted.

■ We can not escape the conclusion that this section of the charge was in disparagement of testimony of good reputation. Saying nothing to call to the jury's

attention the normal significance of good reputation as an affirmative indication of good character, the trial judge singled out for particular mention and for emphasis by colorful phraseology the abnormal situation of good reputation concealing evil character, thus suggesting that the possibility of deceptive reputation had some special significance for this case. Such an instruction may well have induced the jury to give the reputation testimony in this case substantially less weight than the jury might have accorded it in the exercise of independent judgment.

■ Next, after clearly proper instructions concerning the burden of proof and reasonable doubt, the court charged as follows on the presumption of innocence:

"Under our law, thank God, defendants come before us with a presumption of innocence, and that presumption of innocence remains with the particular defendant until the Government of the United States has offered such evidence of such weight and character as to overcome that reasonable doubt and that presumption of innocence, or, in the first instance, taking it step by step, as to overcome the presumption of innocence where it puts the defendant on notice that the defendant must explain to you. Then the defendant has to make explanations for the first time under our law. When the Court says, yes, so far as the presumption of innocence is concerned, for the moment it has vanished, the defendant must explain his or her actions".

We get no clear meaning from the quoted language and we think it unlikely that the jury did. It is possible that the explicit charge on burden of proof and reasonable doubt may have prevented this confusing statement from doing harm, but we can not be confident of that conclusion.

■ One portion of the trial charge may have been intended as a summation of the government's evidence since it began with reference to certain matters as having been stated in the testimony of Hutchins. What followed may have been intended as a summation of other corroborative testimony,

but it was not stated in that way. Actually, the judge spoke as if he were making judicial findings of fact. This is what he said:

"What were the safeguards that were thrown about that [conduct of Hutchins]? Before they left in the morning he was examined entirely, completely and thoroughly by the agents in charge. Things were taken from him, and ten dollars in Government funds were given to him. He was then brought into the vicinity; he went up to the house; he was under surveillance all the way. He was accompanied by a clerk of the Treasury Department, Narcotics Division, a Mr. Johnson, to the porch. He was met at the porch, brought back to the automobile and, coming back to the automobile, handed over the sticks. He did not have them when he went in, so it is only reasonable to assume members of the jury, that he obtained them in there".

Thus did the trial judge state as proven fact an important part of the testimony offered by the prosecution, at the same time strongly urging the jury to draw from these items an inference very prejudicial to the defendant.

Defense counsel did not object to this part of the charge. Moreover, elsewhere the court gave the customary instruction that the jurors are the sole judges of the facts and of the credibility of witnesses. But it is difficult to judge whether these general admonitions prevented the jury from accepting the judge's statement of facts instead of making their own appraisal of the evidence.

Had defense counsel objected without avail to each of these portions of the charge our duty to order a new trial would have been clear. But, except in the one instance already noted, trial counsel did not point out any error in the charge or ask that it be changed. Errors are urged for the first time upon us by new counsel in support of this appeal. As a matter of administrative policy to avoid unnecessary appeals and new trials, it is important that errors, which inevitably will occur from time to time in extemporaneous charges of the most competent judges, be pointed out immediately by trial counsel with a view to their correction then and there. That policy is enforced in many cases by refusal to reverse for defects in a charge not challenged at the trial. Indeed, the silence of counsel often suggests that errors seemed trivial at that time. But where, particularly in a criminal case, several errors appear which in the aggregate contain a potential of substantial damage to the accused, the policy of sound and time saving trial administration which would penalize failure to point out error below, may have to yield to more important considerations of making sure that the accused has been treated fairly. We think this is such a case. The likelihood of injustice seems sufficient to require a new trial.

The judgment and sentence will be vacated and the cause remanded for a new trial or other appropriate procedure.