J. A. **HERZOG,** Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 14611.

United States Court of Appeals
Ninth Circuit.

May 29, 1956.

Dissenting Opinion June 1, 1956.

Supplemental Dissenting Opinion
June 23, 1956.

Writ of Certiorari Denied
Oct. 8, 1956.

See 77 S.Ct. 54.

Stephens and Fee, Circuit Judges, dissented.

Chambers, Circuit Judge, dissented in part.

Phillips, Avakian & Johnston, Spurgeon Avakian, J. Richard Johnston, Oakland, Cal., Frederick Bernays Wiener, Washington, D. C., for appellant.

Lloyd H. Burke, U. S. Atty., Robert H. Schnacke, John Lockley, Richard H. Foster, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and STEPHENS, HEALY, BONE, ORR, POPE, LEMMON, FEE, and CHAMBERS, Circuit Judges.

HEALY, Circuit Judge.

Appellant was indicted on three counts charging willful attempted evasion of federal income taxes. Two counts related to 1947 taxes and the third concerned those of 1948. The accused was acquitted on the first two counts and convicted on the third. On appeal the judgment of conviction was affirmed, 9 Cir., 226 F.2d 561.

Appellant petitioned for a rehearing and his petition was in part granted, limited to questions pertinent to the conflict or apparent conflict between the decision rendered on the appeal and the decision of this court in Bloch v. United States, 221 F.2d 786. On all other points the petition for rehearing was denied. On motion of the court hearing the appeal herein, and pursuant to our Rule 23, the rehearing was ordered to be had en banc, limited as above indicated. The court en banc thereupon heard argument on behalf of the appellant and on behalf of the United States on the issues as so limited.

The primary question for our resolution is whether the power of the court under Rule 52(b) of the Rules of Criminal Procedure, 18 U.S.C.A., is limited or circumscribed by the provision of Rule 30 stating: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Rule 52(b) reads: "Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Like the present case, Bloch, supra, involved charges of income tax evasion. In each case an instruction had been given essaying to define the term "willfully" as used in the statute. That given here is shown in footnote 1 below, and

---

1. "Now, when we use the term 'Wilful' in speaking of a violation of this statute, as used in this criminal statute and as used in most criminal statutes, we mean an act done with a bad purpose, without justifiable excuse, or stubbornly or obstinately or perversely. It may be used to characterize an act done without grounds for believing it is lawful, or conduct marked with completely careless

that in Bloch is quoted in footnote 2. In neither case did the defendant object to the instruction as required by Rule 30. Upon the appeal in Bloch [221 F.2d 788] the court on its own initiative determined that the willfullness instruction constituted prejudicial error " 'in this case.' " It found error also in another instruction reading as follows: " 'The presumption is that a person intends the natural consequences of his acts, and the natural inference would be if a person consciously, knowingly and intentionally did not set up his income, and thereby the government was cheated or defrauded of taxes, that he intended to defeat the tax.' " This instruction was thought, on the authority of Morissette v. United States, 342 U.S. 246, 273, 72 S.Ct. 240, 96 L.Ed. 288, not to be a correct statement of the law in a prosecution for income tax evasion. No comparable instruction was given in the present case. (Apart from these two instructions in Bloch, there appears to have been misconduct of counsel which might of itself have warranted the reversal. See opinion on denial of the government's petition for rehearing, 9 Cir., 223 F.2d 297, where the court noted the government's confession of error because of the misconduct.)

In the cause presently before us the question of the validity of the instruction was first injected by counsel in the course of oral argument on the appeal; and in a supplemental brief filed later the attention of the court was directed to the Bloch decision. The court held

that the provision of Rule 30, quoted above, forecloses the courts from noticing on appeal errors or omissions in instructions where objection thereto was not made below. See the opinion, 226 F.2d at page 567 et seq.

Criminal Rule 30 by its terms precludes *a party* from assigning as error the giving of an instruction to which he has not objected on the trial. Rule 52(b), appearing under the caption "General Provisions," is not directed to the party, but is a grant of authority to the court itself. These rules are not conflicting. Rather, they complement each other. Rule 52(b) was doubtless designed to take care of unusual or extraordinary situations where, to prevent a miscarriage of justice or to preserve the integrity of judicial proceedings, the courts are broadly empowered to notice error of their own motion.[3] The Rule is in the nature of an anchor to windward. It is a species of safety provision the precise scope of which was left undefined. Its application to any given situation must in the final analysis be left to the good sense and experience of the judges.

Subsequent to the adoption of the criminal rules many of the circuits have noticed asserted error in instructions not objected to below. See cases cited in the footnote.[4] In doing so the courts have not been unmindful of Rule 30. Thus in Lazarov v. United States, 6 Cir., decided as late as July 1955, Judge McAllister, writing the opinion, remarked that "of course, an appellate court will

disregard of whether one has a right to do that or not."

2. " 'Wilfully in the statute, which makes a willful attempt to evade taxes a crime, refers to the state of mind in which the act of evasion was done. It includes several states of mind, any one of which may be the willfulness to make up the crime.

" 'Willfulness includes doing an act with a bad purpose. It includes doing an act without a justifiable excuse. It includes doing an act without ground for believing that the act is lawful. It also includes doing an act with a careless dis-

regard for whether or not one has the right so to act.' "

3. The Rule is, of course, applicable both in the trial and in the appellate courts.

4. Daigle v. United States, 1 Cir., 181 F.2d 311, 313; United States v. Cumberland, 3 Cir., 200 F.2d 609; United States v. Ward, 3 Cir., 168 F.2d 226, 228; Lazarov v. United States, 6 Cir., 225 F.2d 319, 329; United States v. Vasen, 7 Cir., 222 F.2d 3, 5-6; United States v. Raub, 7 Cir., 177 F.2d 312, 315; Apodaca v. United States, 10 Cir., 188 F.2d 932, 937; and Robertson v. United States, 84 U.S. App.D.C. 185, 171 F.2d 345.

consider an error in the charge which is seriously prejudicial or amounts to a grave miscarriage of justice even though no objection was made in the trial". And see the extensive and scholarly discussion of the subject by the Seventh Circuit in United States v. Vasen.

This court has not gone overboard in its application of Rule 52(b) to situations such as here presented, and it does not propose to do so now. In the great bulk of the cases in which counsel have sought to have us consider claims of error in instructions not objected to at the trial we have declined to do so. More than once we have stressed the salutary nature of Rule 30 and the vitally important part it plays in the administration of justice. Thus in Enriquez v. United States, 9 Cir., 188 F.2d 313, at page 316, we remarked that Rule 30 "is not designed as a mere trap for the unwary. Painstaking compliance with its requirements, although not an easy matter for the lawyer, is of the very essence of the orderly administration of criminal justice." But, in common with the generality of the circuits, we recognize that the Rule does not debar us from noticing of our own motion error in instructions thought to have resulted in a miscarriage of justice.

The point remaining to be considered by the court en banc is whether under the circumstances here present the error, if any, in giving the willfullness instruction was of so serious a nature as to warrant the disregard of Rule 30. That question is "pertinent" to the matters on which the limited rehearing was granted, and decision of it is essential to the disposition of the rehearing.

It appears that in income tax evasion cases many of the trial courts have fallen into the practice of defining the term "willfullness" in language much the same as that employed in the instruction here and in Bloch. Doubtless these instructions stem from verbiage found in United States v. Murdock, 290 U.S. 389, where, at page 394, 54 S.Ct. 223, 78 L. Ed. 381, the Court recited with seeming approval a variety of definitions given

the word in judicial decisions. The recital in Murdock, however, would hardly seem a safe guide to follow in the formulation of instructions in all income tax evasion cases.

In determining whether the giving or the failure to give an instruction warrants a reversal, the courts are not to consider the instruction in isolation. They are obliged to examine the charge as a whole in light of the factual situation disclosed by the record. Such is the course followed even in the normal criminal case, where the accused has preserved his right of review by timely and appropriate objection on the trial. Leaving out of account the charge under attack, the instructions given here stated the issues fully and fairly. A few excerpts will suffice to disclose their general tenor. Immediately prior to giving the "willfullness" charge the judge said: "Now, the Government in this case has to show and convince you beyond a reasonable doubt before the defendant may be convicted that the defendant had income for the years 1947 and 1948, which was taxable, and that he intentionally and deliberately failed to report that income in his income tax return, and that he did so for the purpose, the deliberate purpose, of cheating or defrauding the United States out of taxes. That is the burden of proof that rests upon the government under this statute." Immediately following the instruction complained of the court stated: "If it appears that the defendant in this case filed an income tax return for the years 1947 or 1948, and you are convinced beyond a reasonable doubt that that was a false and fraudulent income tax return, and that it was filed with the wilful purpose of defrauding the United States of taxes, then the filing of the income tax return itself is a completed offense under the statute."

We turn briefly to the pertinent evidence in the case. Appellant operated a Pontiac agency, dealing in both new and used cars. His principal business was the sale of used cars at wholesale to used car dealers. During the

period in question used cars were in great demand and hard to come by. In making these sales, according to witnesses for the government, appellant exacted "side" payments in cash from the dealers in addition to the price appearing on the invoices or sales orders. These cash "side" payments were not reflected on appellant's books, and concededly the amounts thereof were not reported in his income tax returns. In appellant's original brief on the appeal, this asserted practice in the wholesaling of used cars was characterized as "the principal contention of the prosecution." Appellant's answer to the government's evidence on this vital phase was a flat and unequivocal denial. There was no claim on his part of inadvertence, mistake, or the like. The issue was squarely one of credibility—whether the accused did or did not receive "side" money through his sales to used car dealers. Thus in respect of this major issue the instruction on willfullness was at worst purely innocuous.

But appellant argues that in connection with another aspect of the case— the disposition of certain new cars referred to as "house" cars—he did make claims of inadvertence and confusion, and on that phase he contends that he may well have been prejudiced by the instruction. If we felt ourselves confronted with an extraordinary situation such as would justify a disregard of the salutary provisions of Rule 30 we would consider the argument. But a reading of the instructions as a whole, plus an examination of the evidence pertinent to the matters being reheard, leaves us with no belief or apprehension that the giving of the willfullness charge may have resulted in a miscarriage of justice or in the denial to appellant of a fair trial.

Judgment affirmed.

WILLIAM HEALY,
HOMER T. BONE,
WILLIAM E. ORR,
WALTER L. POPE,
DAL M. LEMMON,
United States Circuit Judges

DENMAN, Chief Judge (concurring in Judge HEALY'S opinion).

The order for the in banc hearing reads:

"Upon motion of the court as originally constituted for the hearing of cause No. 14611, J. A. Herzog v. United States of America, a rehearing en banc is granted and limited to questions pertinent to the conflict or apparent conflict between the decision herein rendered on October 11, 1955, and the decision of this court in Bloch v. United States, 221 F.2d 786, rehearing denied 223 F.2d 297."

It has been seriously questioned whether, where an appeal in a division involves the consideration of several issues, the court in banc may order a rehearing in banc limited, as here, to but one of the issues.

The pertinent provision is 28 U.S.C. 46(c), reading:

"(c) Cases and controversies shall be heard and determined by a court or division of not more than three judges, unless a hearing or *rehearing before the court in banc is ordered* by a majority of the circuit judges of the circuit who are in active service. * * *" (Emphasis added.)

It is apparent that a rehearing in banc of a division's decision is identical in all material respects with the reviewing by the Supreme Court of a case decided by a court of appeals, by its certiorari order. For this 28 U.S.C. 1254(1) provides:

"§ 1254. Courts of appeals; certiorari; appeal; certified questions

"Cases in the courts of appeals may be reviewed by the Supreme Court by the following methods:

"(1) By writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after rendition of judgment or decree".

In both courts the reviewing is a matter of the court's discretion. In both

courts the decision to be reviewed is a matter to be considered de novo and the judgment of the court reviewed may be affirmed or reversed.

The Supreme Court has frequently confined its certiorari review to the consideration of less than all the issues considered by the court of appeals. Typical is the case of Dennis v. United States, 341 U.S. 494, at page 516, 71 S.Ct. 857, at page 871, 95 L.Ed. 1137, where the Court's opinion states:

> "We have not discussed many of the questions which could be extracted from the record, although they were treated in detail by the court below. Our limited grant of the writ of certiorari has withdrawn from our consideration at this date those questions, which include, *inter alia*, sufficiency of the evidence, composition of jury, and conduct of the trial."

It is my opinion that the court in banc has this same power to limit the issues to be reviewed as the Supreme Court has on certiorari. This is confirmed by the language of the Court in Western Pacific Railroad Case, Western Pacific Railroad Corp. v. Western Pacific Railroad Co., 345 U.S. 247, 267, 73 S.Ct. 656, 666, 97 L.Ed. 986, in discussing Section 46(c) that "We hold that the statute is simply a grant of power to order hearings and rehearings *en banc* and to establish the procedure governing the exercise of that power." and that the language on page 270 of Justice Frankfurter's concurring opinion that "Rehearings *en banc* by these courts, which sit in panels, are to some extent necessary in order to resolve conflicts between panels. This is the dominant concern. * * * *"

STEPHENS, Circuit Judge (dissenting).

I dissent from the opinion of the majority of the Court en banc upon the ground that neither this court nor any member thereof has any jurisdiction to consider and pass upon but one single issue of a case in which other issues are involved on appeal to this court.

An affirmance or a reversal of a judgment by an appellate court results from the action of one court composed of judges each of whom brings his views to bear upon every issue raised and each judge must apply his own view to every issue. A conclusion reached by one judge upon any issue may be dispositive of the case in his view, while another judge may reach the same conclusion but think it of little or no effect upon the disposition of the appeal. A combination of conclusions arrived at upon separate issues by different judges of the same appellate jurisdiction can never be warped into an affirmance or reversal by some or all the judges who have participated in such separate piece-consideration of the several issues.

This instant case was heretofore regularly assigned to a Division of this court, as a duly constituted court, and, as such court, the Division considered the briefs, heard oral argument on *all* the issues on appeal, and decided the case. The judgment of the Division affirming the judgment of the District Court has never been set aside by the Division.

Upon a motion for rehearing, the Division granted it as to one issue only, whereas there were multiple issues on appeal, and this Court en banc accepted the Division's invitation to hear and decide the one issue. We have heard en banc that one issue and it alone, and by its opinion the en banc majority purport to pass upon that single issue and relate the en banc majority's conclusions to the Division's disposition of the appeal.

The en banc majority's opinion in effect sets aside the Division's judgment and substitutes its own, although the Court en banc heard and considered but a part (one issue) of the case. It is but fortuitous that the substituted judgment is the same as that of the Division, albeit upon different reasoning. The difficulty I am pointing out would be more apparent had the majority decided to reverse

the Division's (and the District Court's) judgment. But, of course, the difficulty exists as to each equally. It seems, as of course, to me that the Court en banc had no jurisdiction to do as it has done, since the case itself has never been assigned to the Court en banc, nor argued to it, nor submitted to it, nor to any judges of this court other than those of the Division, as a Division and as a duly constituted court. As a matter of fact, not a single judge who has signed the Court's en banc majority opinion has ever had submitted to him any issue of the appeal other than the one single issue. Not one of the Division has agreed to the majority en banc opinion.*

How the Court's en banc majority opinion-decision is designed to be integrated with the Division's, it is impossible to know. If it is designed to replace and supersede the Division's, then the Judges who never have had anything to do but with the one single issue have decided, or have taken the Division's opinion upon, all of the other issues in the appeal "sight unseen."

If it is intended that the Court's en banc majority opinion-decision be advisory to the Division, then I say there is nothing in the law permitting an *advisory* opinion-decision upon an isolated issue of an appeal, or indicating that a Division should, would, or could act upon such advice.

The members of the Division in the instant case were unanimous in their holding on the one isolated issue, and each one considered such holding to be of weight in deciding the appeal. I have never heard it even intimated that any judge of the Division has changed, or will change, his mind or will abandon his own view as to the single issue referred to. How can any judge surrender his conviction on any issue in any case simply to conform to other judges'

views? And the judges of the Division still have the appeal submitted to them. How can any judge, not on the Division, pass upon an appeal in a case as a whole when he has never heard but an isolated issue of that appeal?

What the majority en banc are saying by their opinion-decision is:

The Judges of the Division have affirmed the District Court judgment. We, en banc, officially know nothing about the case except as to the one issue referred to us, which issue the Judges of the Division regard as important. In view of the evidence related to that issue, we think on the contrary that it is of no importance to the decision of the appeal and nevertheless affirm the judgment of the District Court, as the Division did.

Thus, every judge of the Court en banc majority, without knowing a thing as to the several other issues of the appeal, without having heard oral argument on these other issues, and without having had these other issues submitted to him for decision, blindly accepts the Division's conclusion on them by participating in the decision of the Court en banc majority and affirming the judgment.

I am conscious of the fact that I joined in the order of the Court en banc accepting the one issue for consideration. Upon listening to the argument on this one issue, however, doubt as expressed above entered my mind and I promptly communicated it to the active members of the Circuit Court. I take my share of the blame for the confusion resulting, but I see no merit in going further along the line of confusion.

I would rescind our Court's en banc action and send the one issue back to the Division. And then if the Division sees fit to request the Court en banc to

---

* The Division consisted of Judge Mathews, retired, who sat in the case by designation; of Judge Chambers, an active circuit judge; of Judge Byrne, a district judge, sitting by designation. Of the members of the Court en banc, Judges Bone and Orr retired subsequently to the sitting of the Court en banc at the hearing of the isolated issue, and participated in the en banc majority opinion after date of their retirement.

take over the whole case and decide it, I would vote for the Court en banc to conform to such request.

Such a course would comply with our ninth circuit rules in every respect and would be logical and consistent with our fixed course through the years (but with one exception which I think was error) that the Court en banc is neither an appellate nor an advisory Court over a Division.

I dissent upon the fundamental ground that, in the circumstances, neither the Court en banc nor I, individually, have any jurisdiction to pass upon the isolated issue or upon any other issue or issues of the case or to affirm or reverse the Division's judgment. If a majority of the Division request it, this Court en banc can rehear the entire case. It may be that a majority of the active members of the ninth circuit Court could, by rule, provide that it can grant a rehearing in any case after judgment by a Division. But our rules at present do not so provide, and what is more, we have not assumed to do this in the instant case.

I reserve the privilege to later file an expression of my views to the effect that the Chief Judge's comparison of actions by the Supreme Court with this Court's action in the instant case, is not apposite.

### Supplemental Opinion.

STEPHENS, Circuit Judge (dissenting).

Opinion with the decision of the case by this court sitting *en banc* were filed May 29, 1956.

Because of widely divergent views held by members of this court, both as to the merits of one issue of the case, and as to procedure, this case suffered considerable delay in decision. I had prepared a dissent to Judge Healy's opinion when Chief Judge Denman's opinion, concurring upon a ground that I had wrongly assumed had been abandoned, reached me. I was at the time engrossed in other matters so, in order to avoid further delay, I merely added to my opinion that I reserved the privilege of responding to Chief Judge Denman's opinion at a later date.

In this supplemental opinion I have italicized the words *"en banc"* and *"division"* in order to more readily distinguish the two ways in which the court of appeals sits.

Before going into my comment as to the Chief Judge's concurrence, I will merely note that Judge Fee is in accord with my first dissent, but he has not seen my reply to Chief Judge Denman.

Judge Chambers apparently agrees with my original dissent, and has not seen this supplemental opinion. He suggests a possible way out of the dilemma, but adds, "This has not been done." The possible way out suggested by Judge Chambers is not Chief Judge Denman's way out.

The Chief Judge in his opinion, as well as the majority, if I understand him, thinks that the circuit court *en banc* can accept from a statutory *division* of the circuit court a portion of an appeal pending in the *division* and, without considering any other portion of the appeal, decide the whole appeal by applying some unexpressed method of integrating the *en banc's* decision on the one portion, with the *division's* decision on all the remaining portions.

And it must be understood that the Chief Judge does not contend that the court *en banc* has any advisory power over a *division*. It seems, under the Chief Judge's theory and that of the majority, that the decision of the *division* fades out entirely as the decision on appeal. The decision is the *en banc's*.

The appeal in this case raised numerous points, and the *division* thought none good and affirmed the judgment of conviction. However, on petition for rehearing, the *division*, without divesting itself of the case, granted a limited rehearing and asked the *en banc* court to rehear one point only, in order to resolve a possible conflict in our *divisions*. The *en banc* court accepted and heard the one issue, but did not resolve the con-

flict. It merely held as to the point it took over that, if there was an instruction contrary in point of law to a ruling in a former case, it was of no importance because the instructions as a whole, with the applicable evidence in the case upon the one point, was not prejudicial.

The judges thereupon entered their *en banc* decision, affirming. I said in my main dissenting opinion that the judgment of the *division* affirming the district court has never been set aside and I asked the following question:

"How the Court's en banc majority opinion-decision is designed to be integrated with the Division's, I should like to know."

Since the opinion wherein I asked the question was filed, the *en banc's* affirmation of the district court has been filed and the formal entries on the clerk's official minutes show the two official affirmances. My question stands without answer. However, I do not give controlling effect to the mere fact that the two decisions stand on the clerk's book. I suppose, if the *en banc's* decision is good, it would supersede the *division's* decision.

The Chief Judge Denman likens what the *en banc* court has done, to the writ of certiorari, as used by the United States Supreme Court. I think there is much fundamental difference.

First, an appeal to the court of appeals is a statutory right of litigants. There is no such right relating to the Supreme Court in this case and it can be reviewed by the Supreme Court only through the permissive writ of certiorari.[1]

Second, every active member of the court, when sitting *en banc,* and each of the three members, when sitting in *division* as the court, has the duty of considering every point raised on appeal until and unless the court reaches a point absolutely requiring reversal. The Supreme Court, under its own limiting rules, need take only such cases for appellate review, or such portion of cases for appellate review, as it thinks proper. If it grants certiorari on a limited point of the case, it rules on the point and returns the case to the lower court with instructions to consider the whole case with the Supreme Court's view of the limited point. However, if, as in the case of Dennis v. United States, 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, cited by Chief Judge Denman, the one point upon which certiorari is granted is necessarily decisive of the case, it decides the case. Thus, in Dennis, supra, the one point was the constitutionality of the Smith Act. In considering the issuance of certiorari, it had the whole case before it, but refused to grant the writ except upon the constitutional point. Our court must take the whole appeal. If the Supreme Court had found other points worthy of its consideration and had granted certiorari in general, upon determining that the Smith Act was constitutional, the court would have proceeded to the other questions and ruled upon all issues of the appeal.

In our case, the court of appeals, *en banc,* though it had but one phase of the case before it, found no reversible error in the point considered but, without considering and without the right of considering any of the several other points urged as requiring reversal, entered its affirmation of the judgment. Had the whole case been referred to the court *en banc* under our rules, it is altogether possible that the court would have found reversible error in one or more points on appeal. I do not hint that such rever-

---

[1]. See Rice v. Sioux City Memorial Park Cemetery, Inc., 1955, 349 U.S. 70, wherein it is said at page 74, 75 S.Ct. 614, at page 616, 99 L.Ed. 897: "Nor does it [the United States Supreme Court] sit for the benefit of the particular litigants." And again, 349 U.S. at page 79, 75 S.Ct. at page 619, Mr. Chief Justice Taft is quoted: "' * * * [I]t is very impor-tant that we be consistent in not granting the writ of certiorari except in cases involving principles the settlement of which is of importance to the public, as distinguished from that of the parties * * *.' Layne & Bowler Corp. v. Western Well Works, Inc., 261 U.S. 387, 393, 43 S.Ct. 422, 423, 67 L.Ed. 712."

sible error was present, I don't know, never having had the other points before me.

I have suggested in my main dissenting opinion an orderly manner under our rules in which to resolve conflicts between the *divisions* of our court. It is possible that the whole court, by majority vote, has the inherent power to grant rehearings in any case on appeal. Chief Judge Denman and Judge Pope have ever so contended. But, even so, I think such power would not encompass what the court has done in this case.

I think the foregoing plainly shows that the Chief Judge was wrong in saying, as he did in his opinion,

"It is apparent that a rehearing en banc of a division's decision is identical in all material respects with the reviewing by the Supreme Court of a case decided by a court of appeals, by its certiorari order."

And, as to his statement after quoting § 1254(1) of Title 28 U.S.C., I think he was wrong again in saying,

"In both courts the reviewing is a matter of the court's discretion."

In the court of appeals the reviewing of a judgment, when an appeal has been taken, is a *must*. In the United States Supreme Court, the reviewing is a matter of discretion exercised through the petition for the writ of certiorari. Of course, when either court is actually reviewing any point in any case, it applies its discretionary judgment.

As I stated in my main dissenting opinion, I would rescind our court *en banc's* action and send the one issue back to the *division*. Then, if the *division* sees fit to request the court *en banc* to take over the whole case and decide it, I would vote for the court *en banc* to conform to such request.

CHAMBERS, Circuit Judge (concurring and dissenting).

I concur in the affirmance of the judgment of conviction.

The opinion of Judge Stephens is well reasoned. There is one possible answer to his views. That is: if the panel which first heard the case inadvisedly placed a limitation on the scope of the rehearing and the court en banc compounded the error by specifying the same limitation, then the limitations might be held ineffective, rather than the entire orders.

It has been my best judgment, the question having arisen, that the panel and the court en banc should have proceeded to amend the respective basic orders to eliminate the attempted restriction on scope of review. This has not been done.

I still adhere to my concurrence in Judge Byrne's opinion which is now reported at 226 F.2d 561. And I hope that on another day it will become the law of this circuit. It seems to me unhappy when we enforce Rule 30 in a murder case, Shockley v. United States, 9 Cir., 166 F.2d 704, and lay it aside in Bloch v. United States, 9 Cir., 221 F.2d 786, an income tax case.

Granting the power to ignore Rule 30 and find plain error, as the majority en banc holds, I am now hopeful that this shotgun, "plain error," will be kept further back in the closet. If that happens, this Bloch-Herzog business will not have been in vain. I have gone over the record in Bloch, and I think the result reached there was a great miscarriage of justice, granting the power to disregard Rule 30.

If my deductions are correct, it is a necessary corollary of the majority decision here that counsel still cannot object in this court to instructions not objected to in the trial court. But we are free to go wandering looking for plain error. Strange, isn't it?*

---

\* Counsel for Herzog imported the Bloch case here in oral argument over the uncertain bridge of "It denies Mr. Herzog due process to have the court in Dr. Bloch's case search for plain error and refuse to search for it here." That argument is nothing more than the old one that "the policeman didn't arrest two other speeders, so how can he arrest me?"

**674**

JAMES ALGER FEE, Circuit Judge (dissenting).

I fully concur with the opinion of Judge Stephens in dissent. I did not join in the vote to write an advisory opinion on one phase of a criminal case. The majority had and has no jurisdiction to do so. The dicta set out as the views of the majority upon the issue so segregated do not agree with those of the members of the division which heard the case as a whole, as it was empowered to do under the rules, and upon which it affirmed the lower court. Although the majority has wisely reached the same result as the division, their present opinion has no authority and may be disregarded. The opinion of the majority includes intrinsically its own refutation, since it sets out the postulate that an appellate court may notice error in an instruction unassigned, but decides that such error in this case was not prejudicial, although the majority who join in it neither heard argument on the merits nor examined the record.

The maxim, "Never plead guilty," becomes almost axiomatic when an appellate court searches for and finds error in a stock instruction, which has been given by the trial courts for many years, to release a defendant whom the evidence showed guilty. This was apparently done in the Bloch case by another division of this Court. Bloch v. United States, 9 Cir., 221 F.2d 786. If counsel in the trial court can sit mute where the judge gives a stock instruction not applicable or makes a slip of the tongue and such counsel can still argue in the appellate court that reversible error was committed, in the face of the plain language of the rule, there is a new pardoning power. Instructions are given in haste and there is rarely a case where technical error unexcepted to cannot be found by an earnest searcher. The proposition that appellate courts discover errors without the aid of counsel, who have gambled on the jury verdict without calling alleged error in instruction to the attention of the trial court, is usually a fiction. It was so in the case at bar. The language and propositions advanced by the division, in the printed opinion Herzog v. United States, 9 Cir., 226 F.2d 561 on which the judgment of affirmance in this case must stand, go too far and are somewhat lacking in restraint, but these are altogether an excellent balance against the Bloch case. On this phase, I concur with the able elucidation by Judge Chambers.